IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | |
|---|---|
| DUKE ENERGY CAROLINAS, LLC,<br><br>PLAINTIFF,<br><br>v.<br><br>LAKE CRUISES, INC. AND DEBORAH BOGGS HARWELL,<br><br>DEFENDANTS. | C.A. No.:<br><br>**COMPLAINT**<br>**(NON-JURY)** |

Plaintiff, Duke Energy Carolinas, LLC ("Plaintiff" or "Duke Energy"), complaining of Defendants, Lake Cruises, Inc. ("Defendant Lake Cruises, Inc.") and Deborah Boggs Harwell ("Defendant Harwell") (collectively, "Defendants"), alleges and states as follows:

### PRELIMINARY STATEMENT

1. This is an action for a declaratory judgment and other relief arising from Defendants' failure and refusal to remove two (2) unauthorized, abandoned vessels—identified as the "Lady of the Lake" and the "Catawba Queen" (the "Unauthorized Vessels")—that pose potential hazards to safety, navigation, and public health within the lands and waters of the Catawba-Wateree Hydroelectric Project ("Project"), which is owned and operated by Duke Energy under license from the Federal Energy Regulatory Commission ("FERC"). In connection with the Project, FERC approved the Catawba-Wateree Shoreline Management Plan ("SMP"), which applies to the reservoir of Lake Norman ("Lake Norman Reservoir"), and which Duke Energy must enforce. The Unauthorized Vessels are located on Duke Energy property without the

permission or consent of Duke Energy and are in violation of Duke Energy's rights. Duke Energy has notified Defendants on multiple occasions that the Unauthorized Vessels must be removed, but Defendants have failed and refused to do so. Duke Energy requests that the Court declare the parties' respective obligations under the provisions of the federally mandated SMP and Catawba-Wateree Shoreline Management Guidelines ("SMG") approved by FERC for the Project.

2. In addition to its request for declaratory judgment, Duke Energy further seeks an injunction from this Court ordering that Defendants remove the Unauthorized Vessels at Defendants' sole expense and in full compliance with federal and state law. Duke Energy also asserts a claim for trespass.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the Federal Power Act, 16 U.S.C. § 791a, *et seq.* ("FPA") and other applicable federal laws and regulations pertaining to Duke Energy's application and enforcement of the SMP and the SMG.

4. This Court also has jurisdiction over any state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).

5. Defendant Lake Cruises, Inc., owns the Unauthorized Vessels currently abandoned on Duke Energy's property, which are the subject of this Complaint.

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), in that the relevant portions of both the Project at issue, and the Unauthorized Vessels, are situated in this District.

## PARTIES

7. Duke Energy is a limited liability company duly organized and existing under the laws of the State of North Carolina and has its principal place of business located in North Carolina.

8. Duke Energy is informed and believes and, thereupon, alleges that Defendant Lake Cruises, Inc. is a corporation duly organized and existing under the laws of the State of North Carolina and has its principal place of business located in North Carolina.

9. Duke Energy is informed and believes and, thereupon, alleges that Defendant Harwell is a resident of the State of North Carolina.

## FACTS

10. Duke Energy owns the Lake Norman Reservoir, which is located, in part, in Catawba County, North Carolina. The Lake Norman Reservoir is part of the Project located in North Carolina, including in Catawba County, and in South Carolina. The Project is comprised of multiple hydropower stations and reservoirs providing clean, economical, and renewable power. Lake Norman is the largest of the Project's eleven reservoirs and it provides over 38% of the total usable water storage in the Project. Approximately 23% of Duke Energy's installed electric generating capacity in the Carolinas relies on the Project's water storage. Also, approximately 2 million people get their drinking water from that same 11-lake system.

11. Pursuant to the authority granted to it by the FPA, FERC issued a license to Duke Energy to operate and maintain the Project.

12. As required by FERC, and in order to fully, fairly, and consistently discharge its responsibilities as licensee, Duke Energy developed the SMP and SMG. The primary goal of the SMP is to provide for public and private access to Project lands and waters while appropriately managing the Project's natural and cultural resources and protecting the Project's primary function of electricity production, while also maintaining compliance with the Project license issued by FERC. The provisions of the SMG include detailed procedures and criteria to regulate activities within Project reservoirs owned and managed by Duke Energy.

13. Defendant Lake Cruises, Inc. is the registered owner of the Unauthorized Vessels, which are registered with the United States Coast Guard as official vessel numbers 1134303 and 950670, as shown in the true and accurate copies of the United States Coast Guard National Vessel Documentation Center certificates of documentation attached hereto as **Exhibit A**.

14. Defendant Harwell is the President of Defendant Lake Cruises, Inc.

15. Upon information and belief, Defendant Lake Cruises, Inc. was, and is, organized and operated as the alter ego of Defendant Harwell for Defendant Harwell's personal benefit and advantage.

16. Upon information and belief, at all relevant times, Defendant Harwell has exercised actual control over Defendant Lake Cruises, Inc., operating it as a mere instrumentality or tool, such that Defendant Lake Cruises, Inc. has no separate mind, will or existence of its own.

17. Upon information and belief, at all relevant times, Defendant Harwell has exercised complete dominion and control over Defendant Lake Cruises, Inc.

18. Upon information and belief, at all relevant times, Defendant Lake Cruises, Inc. has, or has had, inadequate capitalization.

19. Upon information and belief, at all relevant times, Defendants have so intermingled their personal and financial affairs that Defendant Lake Cruises, Inc. was, and is, the alter ego of Defendant Harwell.

20. The Estate of Jack R. Williams (Deborah Boggs Harwell, Executrix) previously owned a facility on Lake Norman identified as Queens Landing. The most recent FERC Order regarding Queens Landing, in which an expansion to Queens Landing was approved, references the Unauthorized Vessels as "two cruise and dinner boats" that had been previously approved to

be moored at Queens Landing. A true and accurate copy of the FERC Order is attached as **Exhibit B** to this Complaint.

21. A true and accurate copy of the True Public Marina[1] Lease for Queens Landing, which was entered into by Duke Energy and Defendant Harwell, as executrix of the Estate of Jack R. Williams, is attached as **Exhibit C** to this Complaint.

22. At the time that the FERC Order and True Public Marina Lease were executed, and until Defendant Harwell sold Queens Landing at the end of 2022, Defendant Harwell was only authorized to moor the Unauthorized Vessels at Queens Landing.

23. Defendant Harwell negotiated with the new owner of Queens Landing to let the Unauthorized Vessels remain moored at that marina, but that agreement expired at the end of February 2023.

24. Any location at which the Unauthorized Vessels have been moored within Lake Norman since February 2023 has not been authorized by Duke or FERC, yet has been within the Project Boundary[2] controlled by Duke Energy pursuant to FERC's federal license.

25. At last check, the Unauthorized Vessels are currently anchored between two Duke Energy-owned islands, as shown in the true and accurate copies of the Google Earth overhead image and the photographs dated August 7, 2025, attached hereto as **Exhibit D**.[3]

---

[1] A True Public Marina is defined in the SMP as "[a] business operation that involves the public's use of project lands and waters for facilities where boats can be launched, retrieved or moored and where activities customarily associated with marinas are provided to the public." *SMP*, at C-97.

[2] The Project Boundary is defined in the SMP as "the area within the Normal Full Pond Elevation of the Project reservoirs and the lands immediately surrounding the dams, powerhouses, and Project Recreation Sites." *SMP*, at 2. The Normal Full Pond Elevation of Lake Norman Reservoir is 760.0 feet (AMSL). Id.

[3] The Unauthorized Vessels are currently anchored on lakebed that Duke Energy owns in fee simple. However, the SMP and SMG apply within the entirety of the Project Boundary, regardless of whether Duke Energy owns the lakebed in fee simple or owns a flowage easement for any tract

26. However, the Unauthorized Vessels have broken loose from their anchors on at least one prior occasion and continue to present potential safety and environmental hazards, should the Unauthorized Vessels break loose again or leak any fluids or hazardous substances into the lake. There is a particular concern that, with the Unauthorized Vessels being unoccupied, people could visit the Unauthorized Vessels and jump off of them or engage in other activities that pose a risk of either personal harm to the individual or property damage and/or vandalism to the Unauthorized Vessels. Despite repeated requests, Defendants have not made the Unauthorized Vessels available for inspection by Duke Energy.

27. Article 409 of Duke Energy's FERC license provides, in part, that Duke Energy "must implement the [SMP] approved by [FERC] on October 15, 2003 . . . and amended under the prior license."

28. Appendix C, Section 1, of the SMP provides the criteria for Commercial Marina Facilities, including True Public Marinas. *SMP*, at C-11 – C-17.

29. The SMP requires that "[a]ll moored watercraft must be within the confines of the lease area," as defined in the "lease/user's agreement/permit for the FERC Project area that the facility will occupy." *SMP*, at C-14.

30. The SMP specifically prohibits the "[a]bandonment of personal property including, but not limited to, vehicles, watercraft, boat trailers, lake use facilities, and building materials[.]" *SMP*, at C-71.

31. Pursuant to the SMP, "[a]bandoned watercraft must be removed from within the Project Boundary." *SMP, Appendix E – Process for Structure Renovation and Removal*, E-3.

---

within the Project Boundary, and Duke Energy is entitled to enforce the SMP and SMG throughout the area within the Project Boundary.

32. Defendants have violated the SMP and SMG and are trespassing upon real property owned by Duke Energy under federal mandate by situating, and failing and refusing to remove the two (2) Unauthorized Vessels that pose potential hazards to safety, navigation, and public health within the Project's lands and waters.

33. Although the Unauthorized Vessels are titled in the name of Defendant Lake Cruises, Inc., Defendant Harwell is the person responsible for having the Unauthorized Vessels situated on Duke Energy's real property and for failing and refusing to remove the Unauthorized Vessels.

34. Duke Energy has formally notified Defendants in writing on multiple occasions that the Unauthorized Vessels are in violation of the SMP and SMG and therefore must be removed, and has attempted to work with Defendants on a plan to resolve the issue with Defendants and answer any questions Defendants might have. Despite representations that the Unauthorized Vessels would be removed and promises from Defendants' counsel to provide dates for site visits to the Unauthorized Vessels to discuss, among other things, potential logistics for removal, no dates were ever supplied and the Unauthorized Vessels remain moored and abandoned on Duke Energy's property.

35. In support of Duke Energy's claims, it obtained an Affidavit from Michael A. Phillips, a well-qualified, third-party FERC project resource management expert. In his Affidavit, Mr. Phillips set forth his professional opinions that, among other things, the unauthorized mooring of the Unauthorized Vessels violates the SMP and SMG; that Duke Energy's actions with respect to the Unauthorized Vessels have been reasonable, consistent with its required enforcement of the SMP and SMG, and consistent with industry standards and practices for a FERC licensee; and that the Unauthorized Vessels should be removed as soon as possible from Lake Norman due to their

non-compliance with the SMP and SMG, and the environmental, navigational, and safety risks that they pose.  A true and accurate copy of Mr. Phillips' Affidavit is attached as **Exhibit E** and incorporated herein.

36. In spite of Duke Energy's attempts to work with Defendants to resolve the issue, Defendants have failed and refused to respond or comply.

## FOR A FIRST CAUSE OF ACTION
**(Declaratory Judgment)**

37. The allegations contained in Paragraphs 1 through 36 of the Complaint are incorporated herein by reference.

38. This cause of action seeks a declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 et. seq., for the purpose of determining questions of actual controversy between the parties as more fully described below.

39. There is an actual controversy between Defendants and Duke Energy regarding Duke Energy's authority to apply and enforce, as well as Duke Energy's application and enforcement of, the SMP and the SMG as set forth in detail in this Complaint.  Duke Energy requests that the Court affirm Duke Energy's authority to apply and enforce the SMP and the SMG and to further construe the provisions of the SMP and the SMG to declare the rights and responsibilities of the parties concerning the Unauthorized Vessels within the Project Boundary of the Lake Norman Reservoir.

40. It is specifically requested that this Court declare that Duke Energy has full authority to apply and enforce the provisions of the SMP and the SMG.[4]

---

[4] This request is consistent with the judgment in U.S. District Court for the Western District of North Carolina Judge Robert J. Conrad, Jr.'s Order Granting Defendant's Motion to Alter or Amend and Motion for Summary Judgment, at 22 (granting Duke Energy's Motions and holding

41. It is further specifically requested that this Court declare that the provisions of the SMP and the SMG indicate that Defendants' abandonment of the Unauthorized Vessels within the Project Boundary is in violation of the SMP and SMG and that the Unauthorized Vessels must be removed.

42. Duke Energy further seeks an order of the Court requiring Defendants to immediately remove the Unauthorized Vessels from the Duke Energy property within the Project Boundary in a manner that is consistent with state and federal law (including, but not limited to, all regulations and application requirements of the U.S. Army Corps of Engineers and Duke Energy's related guidelines and procedures) or, if Defendants fail to do so, providing that Duke Energy may, in its discretion, either seek to enforce such an order in contempt, or that Duke Energy, and any and all other persons acting on its behalf, shall have the right to remove the Unauthorized Vessels from the Duke Energy property within the Project Boundary at any time thereafter, and, without prior notice to Defendants, or further action of the Court, to dispose of the Unauthorized Vessels as it sees fit in its sole discretion.

43. Duke Energy, therefore, is entitled to a declaratory judgment of the parties' respective obligations under the provisions of the SMP and the SMG, as set forth above.

---

"Duke Energy may take whatever action it deems appropriate consistent with the [SMP] and [SMG] to have [the unauthorized dock] removed"), attached hereto as **Exhibit F**.

## FOR A SECOND CAUSE OF ACTION
(Trespass)

44. The allegations contained in Paragraphs 1 through 43 of the Complaint are incorporated herein by reference.

45. Duke Energy owns and manages the lands comprising the Project, including the Lake Norman Reservoir located partly in Iredell County, North Carolina.

46. Defendants have situated two Unauthorized Vessels—both of which encroach upon the lands and waters owned or controlled by Duke Energy—within the Project Boundary[5] as shown in **Exhibit D**.

47. The encroaching Unauthorized Vessels were situated by Defendants on lands and waters owned or controlled by Duke Energy without Duke Energy's permission and, despite notice from Duke Energy to remove them, have remained there without Duke Energy's permission.

48. As a result of the foregoing conduct of Defendants and the existence and location of the Unauthorized Vessels, which Defendants voluntarily placed upon Duke Energy property within the Project Boundary, and which Defendants have voluntarily allowed to trespass upon Duke Energy's property within the Project Boundary, Duke Energy's rights have been, and will be, impaired and abridged by the conduct of Defendants and the presence of the Unauthorized Vessels. The location of the Unauthorized Vessels constitutes an interference with the use and enjoyment of the Duke Energy property within the Project Boundary by Duke Energy and also interferes with Duke Energy's title to the Duke Energy property within the Project Boundary.

---

[5] The Project Boundary is defined in the SMP as "the area within the Normal Full Pond Elevation of the Project reservoirs and the lands immediately surrounding the dams, powerhouses, and Project Recreation Sites." *SMP*, at 2. The Normal Full Pond Elevation of Lake Norman Reservoir is 760.0 feet (AMSL). Id.

49. Despite repeated demands and attempts to work with Defendants to resolve the issue, Defendants have refused and failed to remove the Unauthorized Vessels from Duke Energy's property.

50. Defendants' wrongful abandonment of the Unauthorized Vessels on Duke Energy's property is a trespass each day the Unauthorized Vessels remain and constitutes a distinct wrong.

51. Defendants, therefore, have trespassed and continue to trespass on Duke Energy's property.

52. As a direct and proximate result of Defendants' trespass on Duke Energy's property, Duke Energy has suffered and continues to suffer damages.

53. As a result of the foregoing, Duke Energy is entitled to all damages sustained by it as a result of Defendants and the Unauthorized Vessels trespassing upon Duke Energy's property within the Project Boundary, including all costs of removal of the Unauthorized Vessels, to the extent Duke Energy incurs the same in the event that Defendants fail to remove the same, as such relief is sought elsewhere in this Complaint.

54. Because Defendants' trespasses are willful, wanton, reckless, and intentional, Duke Energy is also entitled to punitive damages.

**FOR A THIRD CAUSE OF ACTION**
**(Equitable Relief)**

55. The allegations contained in Paragraphs 1 through 54 of the Complaint are incorporated herein by reference.

56. Duke Energy is immediately and irreparably harmed by the Defendants' mooring of the Unauthorized Vessels within the Project Boundary. Duke Energy has no adequate remedy at law.

57. Accordingly, Duke Energy is entitled, pursuant to Rule 65 of the North Carolina Rules of Civil Procedure, to the entry of an order for permanent injunctive relief requiring Defendants to immediately remove the Unauthorized Vessels from Duke Energy's property within the Project Boundary in full compliance with state and federal law (including, but not limited to, all regulations and application requirements of the U.S. Army Corps of Engineers and Duke Energy's related guidelines and procedures).

**WHEREFORE**, Plaintiff, Duke Energy Carolinas, LLC, prays that the Court rule and enter judgment against Defendants as follows:

1. Judgment on its claims against Defendants;

2. Entry of an order in favor of Duke Energy, and against Defendants, requiring Defendants, within fifteen (15) days of said order, to remove the Unauthorized Vessels from the Duke Energy property within the Project Boundary in full compliance with state and federal law (including, but not limited to, all regulations and application requirements of the U.S. Army Corps of Engineers and Duke Energy's related guidelines and procedures);

3. A requirement in said order that if Defendants fail to remove the unauthorized abandoned vessels within fifteen (15) days of the Court's order, Duke Energy may, at its option, seek an order of the Court holding Defendants in contempt and/or seeking sanctions for their failure to comply with the Court's order and/or that Duke Energy, and any and all other persons acting on its behalf, shall have the right to remove the Unauthorized Vessels from the Duke Energy property within the Project Boundary at any time thereafter, and, without prior notice to Defendants, or further action of the Court, to dispose of the Unauthorized Vessels as it sees fit in its sole discretion, and to be awarded a monetary judgment in its favor and against Defendants for all expenses incurred by Duke Energy as a result of any such removal work;

4. Entry of an order in favor of Duke Energy on its trespass claim, including for all damages, including both actual and punitive, sustained by Duke Energy as a result of Defendants and the Unauthorized Vessels trespassing upon the Duke Energy property within the Project Boundary, including all costs of removal of the Unauthorized Vessels to the extent Duke Energy incurs the same in the event that Defendants fail to remove the same, as such relief is sought elsewhere in this Complaint;

5. Reasonable attorneys' fees and costs to the extent allowed by contract and/or law; and

6. Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**HAYNSWORTH SINKLER BOYD, P.A.**

/s/ Joshua D. Spencer
Joshua D. Spencer (N.C. Bar No. 50216)
jspencer@hsblawfirm.com
ONE North Main Street, 2nd Floor (29601)
P.O. Box 2048
Greenville, South Carolina 29602-2048
Phone: (864) 240-3200
Fax: (864) 240-3300

*Attorneys for Plaintiff,*
*Duke Energy Carolinas, LLC*

October 2, 2025
Greenville, South Carolina