# Exhibit B

## FERC Order

Case 5:25-cv-00159-MEO-DCK    Document 1-2    Filed 10/02/25    Page 1 of 5

125 FERC ¶ 62,199
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Duke Energy Carolinas, LLC                    Project No. 2232-556

ORDER MODIFYING AND APPROVING NON-PROJECT USE OF PROJECT
LANDS AND WATERS

(Issued December 02, 2008)

1.      On August 15, 2008, Duke Energy Carolinas, LLC (licensee) filed an application for non-project use of project lands and waters at the Catawba-Wateree Project (FERC No. 2232). Specifically, the licensee requests Commission approval to lease to Lake Cruises, Inc. (applicant) 2.31 acres to expand Queen's Landing Marina, on Lake Norman, in Iredell County, North Carolina.

2.      In 1992, the Commission approved Queen's Landing Marina on two parcels of property containing 0.60 acre and 1.20 acres.[1] The marina was previously approved for boat rentals and 20 existing boat slips, a restaurant, two cruise and dinner boats, restrooms, a snack bar and gift shop, a bumper boat pool, a miniature golf course, and tennis courts. In its current proposal, the applicant is requesting permission to add one dock facility that would accommodate ten boats, 13 jet-ski ports to an existing dock, one new floating dock to be used for rental boats, and one new floating dock to be used for parking antique boats. The expansion would increase the existing leased area by 0.51 acre to a total of 2.31 acres.

3.      The floating dock structures would be constructed of vinyl decking, a metal frame, and encapsulated Styrofoam floatation. The cluster docks would be constructed off site and floated into place during low lake recreation usage. Reflectors would be installed on the ends and outside of the cluster dock to insure visibility.

---

[1] 58 FERC § 62,079

Project No. 2232-556                                                                 2

## CONSULTATION AND PUBLIC NOTICE

4.      Prior to filing of the licensee's application, the applicant consulted with the U.S. Fish and Wildlife Service (FWS), U.S. Army Corps of Engineers (COE), North Carolina Department of Environment and Natural Resources (NCDENR) Division of Parks and Recreation, North Carolina State Historic Preservation Office (SHPO), NCDENR Division of Water Quality, North Carolina Wildlife Resources Commission (NCWRC), North Carolina Division of Environmental Health (NCDEH), Lake Norman Marine Commission, Iredell County Planning Department, and the Catawba Indian Nation.

5.      On December 19, 2007, the COE responded that no Department of the Army authorization is required.  In a letter dated February 11, 2008, the FWS recommended measures to minimize the effects of the proposed project on fish and wildlife resources. The SHPO had no comments in a letter dated January 2, 2008.  The NCDENR Division of Water Quality issued an approval of 401 Water Quality Certification on February 13, 2008.  In a letter dated January 4, 2008, the NCWRC stated that it had no objections to the proposal, but provided general recommendations for boat slips.  The remaining consulted parties stated in letters that they had no objections to the proposal; although, the Catawba Indian Nation stated that it must be notified if Native American artifacts and/or human remains are located.  The applicant responded to the NCWRC's and FWS's comments in letters dated February 4 and February 27, 2008, respectively.

6.      On August 26, 2008, the Commission issued a public notice describing the proposed action, with a comment period ending September 26, 2008.  On September 16, 2008, the Department of the Interior (DOI) filed an intervention on the application.  In a follow up letter, dated November 17, 2008, the DOI states that the licensee had appropriately addressed most of the recommendations made by the FWS in its February 11, 2008 letter.  However, the DOI still wants the marina to develop and implement a spill prevention plan, and contribute to the North Carolina Habitat Enhancement Program for each of the proposed slips.  The DOI also states that the requirements under Section 7 of the Endangered Species Act have been fulfilled, but Section 7 may need to be reconsidered if new information reveals that this action may affect a listed species or critical habitat; if the action is subsequently modified in any way; or if a new species is listed, or critical habitat is determined that may be affected by the proposed action.

## DISCUSSION AND CONCLUSION

7.      On November 13, 2008, the licensee filed a letter stating that the applicant agrees to provide absorbent materials at the marina for any spills that may occur.  Since, there are no gas tanks at the facility, no additional measures are proposed.  The applicant has also agreed to contribute to the North Carolina Habitat Enhancement Program once its application has been approved.

Project No. 2232-556                                                                       3

8.      Also in its application, the licensee states that the applicant has agreed to comply with all recommendations, requirements and/or conditions contained in the agencies' letters. The applicant would be required to follow Duke Shoreline Management Guidelines during construction, and maintain the structures in a safe condition. The licensee would include in the lease the condition that use of the leased lands shall not endanger health or safety, create a nuisance, or otherwise be incompatible with the overall recreational use of the project.

9.      The project has a Programmatic Agreement (PA) among the Commission, Advisory Council on Historic Preservation, and the North and South Carolina State Historic Preservation Officers, which was executed April 18, 2001. The PA stipulates what measures are to be taken in the event previously unidentified cultural resources are discovered. The proposed lease would be under the same requirements stipulated in the PA.

10.     The proposed boat docks should be constructed as approved in this order, and in a timely manner to ensure that they do not result in new or different impacts than anticipated, due to unauthorized changes to the facilities or changes in the surrounding environment over time. In order to keep the Commission apprised of the progress towards completing the proposed boat docks and to ensure the facilities are built as approved, the licensee should file documentation, including photographs, showing the location and layout of the boat docks. The filing should also include verification that the licensee inspected the proposed facilities to ensure that they have been constructed as approved in this order. If the facilities are partially completed or construction has not begun, the licensee should include in its filing, for Commission approval, a schedule for completing construction of the proposed facilities, and a description of the key factors that were considered in the development of the schedule.

11.     The licensee and the applicant consulted with all appropriate parties prior to filing the application with the Commission. The proposed action would involve minimal ground disturbance. Permitting the marina to be expanded would not result in any substantial adverse impacts to project lands, waters, fish and wildlife resources, or recreational and aesthetic resources, and would not interfere with project purposes. The licensee's application to issue a permit to expand the marina should be approved.

The Director orders:

     (A) The application for non-project use of project lands, filed on August 15, 2008, requesting Commission authorization to issue a permit to Lake Cruises, Inc., to expand Queens Landing Marina on Lake Norman, is approved.

     (B) Within two years from the date of this order, the licensee shall file with the Commission documentation, including photographs, showing the completed facilities as

Project No. 2232-556                                                    4

approved in ordering paragraph (A). The licensee shall include notification that it has inspected the facilities to ensure that they have been constructed as approved in this order. If the facilities are partially completed or construction has not begun, the licensee shall file, for Commission approval, a schedule for when construction will be completed, and a description of the key factors that were considered in the development of the schedule.

(C)  This order constitutes final agency action. Requests for rehearing by the Commission may be filed within 30 days of the date of issuance of this order, pursuant to 18 CFR § 385.713.

Robert J. Fletcher
Chief, Land Resources Branch
Division of Hydropower
Administration and Compliance