# Exhibit E

## Affidavit of Michael A. Phillips

STATE OF GEORGIA )
) **AFFIDAVIT OF MICHAEL A. PHILLIPS**
COUNTY OF FAYETTE )

PERSONALLY APPEARED BEFORE ME, the undersigned officer duly authorized to administer oaths, Michael A. Phillips, who, after being duly sworn, states as follows:

1. I am a citizen and resident of the State of Georgia.

2. I am over the age of eighteen (18) years and am competent to testify to the matters contained in this Affidavit. I have personal knowledge of all matters contained in this Affidavit.

3. As detailed in my resume, which is attached hereto as **Exhibit A**, I earned a Bachelor of Science degree in Forest Resource Management from the University of Georgia in 1977 and a Master of Business Administration from Berry College in 1982. After completing my education, I worked for Georgia Power for 39 years, including 21 years directly involved in Federal Energy Regulatory Commission ("FERC") project resource management. I retired from Georgia Power in 2017.

4. I have been retained as an expert consultant by attorneys representing Duke Energy Carolinas, LLC ("Duke Energy") related to the matter that is the subject of this Affidavit. I have reviewed various materials related to the matter and have reached certain professional opinions related to it. The bases of my opinions include my knowledge and experience in FERC hydroelectric project resource management and my review of documents and other information related to the matter.

5. Based upon the information I have reviewed, the opinions I have reached in this matter, which are set forth in this Affidavit, are reached to a reasonable degree of certainty in the field of FERC project resource management. Any facts, data, publications, references, codes, standards, documents, surveys, photographs, imagery, or other information relied on by me to

form the opinions reached in this matter and set forth in this Affidavit are of the type reasonably relied on by experts in my field in forming opinions like the ones contained in this Affidavit.

6. I have reviewed the facts and circumstances at issue in the above-referenced matter related to Duke Energy's enforcement of its Catawba-Wateree Project Shoreline Management Plan, including the Shoreline Management Guidelines, ("Plan and Guidelines") concerning the unauthorized vessels, identified as the "Lady of the Lake" and the "Catawba Queen" ("Unauthorized Vessels"), which are currently moored in the Lake Norman reservoir within the lands and waters of the Catawba-Wateree Hydroelectric Project ("Project"), including the Project Boundary.[1]

7. Duke Energy is the FERC licensee for the Project, which is comprised of multiple hydropower stations and reservoirs in North Carolina and South Carolina.

8. I am further informed that Duke Energy seeks to operate and maintain the Project in compliance with all FERC license requirements. I understand that, in order to fulfill its responsibilities as a FERC licensee, Duke Energy developed the Plan and Guidelines, which is standard procedure in the industry for FERC licensed reservoirs. The Plan and Guidelines provide detailed procedures and criteria used to regulate activities within the Project lands and waters managed by Duke Energy.

9. I am familiar with the purpose, development, and application of similar Shoreline Management Plans and Shoreline Management Guidelines through my experience as Land Management Manager for Georgia Power Company ("Georgia Power") prior to my retirement in 2017, as well as through my involvement with various industry groups, including the National

---

[1] The Project Boundary is defined in the Plan and Guidelines as "the area within the Normal Full Pond Elevation of the Project reservoirs and the lands immediately surrounding the dams, powerhouses, and Project Recreation Sites." Plan and Guidelines, at p. 2. The Normal Full Pond Elevation of Lake Norman Reservoir is 760.0 feet (AMSL). Id., at p. 3.

Case 5:25-cv-00159-MEO-DCK    Document 1-5    Filed 10/02/25    Page 3 of 12

Hydropower Association and the annual meetings of the FERC Shoreline Management Workshop. Specifically, in my role at Georgia Power, I managed FERC compliance for nine (9) hydroelectric projects consisting of fourteen (14) reservoirs, which involved the day-to-day management of the Shoreline Management Plans and Guidelines, licensing and leasing programs, and the public recreation and environmental programs.

10. The Plan and Guidelines provide as follows: "Any occupancy or use of Project lands and waters within the Project Boundaries of FERC-licensed reservoirs or Duke Energy-owned land within or adjoining the reservoir boundaries requires prior written authorization by Duke Energy." Plan and Guidelines, at C-1. The Plan and Guidelines further provide: "Applicants for many of these activities and other activities that may affect Duke Energy property must first contact DE-LS and obtain written authorization prior to beginning any activity/construction inside the FERC Project Boundaries or on Duke Energy property." Plan and Guidelines, at C-61.

11. With regard to the specific case at hand, I understand that the Unauthorized Vessels were previously authorized, pursuant to a FERC Order and True Public Marina Lease, to be moored at Queens Landing, a facility on Lake Norman. I further understand that following the sale of Queens Landing to a new owner, the Unauthorized Vessels were allowed to continue to be moored at Queens Landing through the end of February 2023, at which time the agreement expired. Any location at which the Unauthorized Vessels have been moored within Lake Norman since February 2023 has not been authorized by Duke Energy or FERC, including by virtue of the fact that the Unauthorized Vessels never received written authorization from Duke Energy as required by the Plan and Guidelines, as set forth above. See Plan and Guidelines at C-

1, C-61. I understand that the Unauthorized Vessels are currently located in the Project Boundary and are anchored between two Duke Energy-owned islands in Lake Norman.

12. I further understand that Duke Energy has attempted to work with Ms. Deborah Harwell and Lake Cruises, Inc. to remove the Unauthorized Vessels from Lake Norman, including by virtue of communications with both Duke Energy personnel and correspondence to counsel for Ms. Harwell and Lake Cruises, Inc., dated July 6, 2023; December 13, 2023; May 20, 2024; and June 19, 2024.

13. Specifically, Duke Energy requested agreement by Ms. Harwell and Lake Cruises, Inc. to remove the Unauthorized Vessels at their expense and in full compliance with federal and state law, and also requested a plan for that removal. Duke Energy also requested dates for two site visits at which: (1) the daily maintenance company that allegedly maintains the Unauthorized Vessels would take Duke Energy personnel to the Unauthorized Vessels and show them what the company does to the vessels and the condition of the vessels; and (2) a management team member from Clover Transport would meet Duke Energy personnel at Duke Energy's suggested removal location (NW corner of Cowans Ford Dam) to discuss potential logistics for removal, etc. at that location. Based on email correspondence from counsel for Ms. Harwell and Lake Cruises, Inc. dated September 12, 2023, Duke Energy was of the understanding that Ms. Harwell and Lake Cruises, Inc. had agreed to remove the Unauthorized Vessels from Lake Norman and that they were just working through the logistics of that removal, including through their counsel identifying proposed dates for the site visits.

14. However, Ms. Harwell and Lake Cruises, Inc. failed to provide these proposed dates for site visits and the Unauthorized Vessels remain in the Lake Norman reservoir, within the lands and waters of the Project.

15. It is my understanding that in the time that they have been moored in an unauthorized fashion, the Unauthorized Vessels have broken loose from their anchors on at least one occasion and have been the subject of multiple third-party reports, including a report of an oil sheen on the water around the Unauthorized Vessels, a report of an active diesel fuel leak associated with the Catawba Queen, and a Cornelius Police Department report of a dragging rear anchor. Counsel for Ms. Harwell and Lake Cruises, Inc. disputed these third-party reports in a June 14, 2024 letter that also alleged that the Unauthorized Vessels are not abandoned or unauthorized and that they do not violate the Plan and Guidelines.

16. The Unauthorized Vessels are unique in that they are extremely large (particularly as compared to other private vessels). Due to their size, use, and purpose, they were once housed at a marina in order to accommodate them, and they are commercial vessels. For these reasons, there is significant concern with respect to the Unauthorized Vessels being moored in their current location because of the damage that they could cause if they were to sink and because of other damage that they could be currently causing due to their size, commercial nature, condition, and the fact that they are no longer housed at a marina capable of properly housing them. Based upon these factors and those described above, the Unauthorized Vessels also present significant environmental, safety, and navigational risks.

17. On June 14, 2024, Ms. Harwell, through her counsel, requested approved locations for mooring the Unauthorized Vessels on Lake Norman, but she was informed by Duke Energy that there is no location on Lake Norman at which the Unauthorized Vessels can be moored that will comply with the Plan and Guidelines and, thus, the Unauthorized Vessels must be removed from Lake Norman. Ms. Harwell had also sent text messages to a Duke Energy Lake Services representative indicating that she intends to take the Catawba Queen out of the

water soon and intends to take the Lady of the Lake to another location. Duke Energy awaits written confirmation of the specific location to which the Lady of the Lake is being moved on Lake Norman, confirmation that the Catawba Queen is being removed from Lake Norman entirely, and information regarding when the Lady of the Lake will also be removed from Lake Norman.

18. As the FERC licensee for the Project, Duke Energy is required to implement and enforce the Plan and Guidelines. In Section 4(e) of the Federal Power Act ("FPA"), Congress authorized FERC to issue licenses for projects "necessary or convenient . . . for the development, transmission, and utilization of power across, along, from, or in any of the streams or other bodies of water over which Congress has jurisdiction . . . ."[2] Section 10(c) of the FPA requires the licensee to maintain the project and conform to FERC's Rules.[3] FERC, in turn, issued a license to, and empowered, Duke Energy to regulate the Project. The FERC License issued to Duke Energy for the Project provides that Duke Energy "*must implement* the Catawba-Wateree Shoreline Management Plan. . . approved by . . . [FERC] on October 15, 2003 . . . and amended under the prior license."[4] Accordingly, Duke Energy is required, pursuant to the license issued to it by FERC and the FPA, to implement and enforce the Plan and Guidelines. The Plan and Guidelines govern Duke Energy's operation and management of the *entire* Lake Norman reservoir within the Project. Duke is FERC-licensed to enforce the Plan and Guidelines throughout the entirety of the reservoir, which includes more than just the shoreline surrounding Lake Norman.

---

[2] 16 U.S.C. § 797(e).

[3] 16 U.S.C. § 803(c).

[4] Duke Energy Carolinas, LLC, 153 FERC ¶ 62,134 (2015). Article 409 of the FERC license at p. 108 (emphasis added).

19.     As licensee for the entirety of the Lake Norman reservoir tasked with enforcement of the Plan and Guidelines, Duke Energy is entitled to seek the removal of the Unauthorized Vessels from Lake Norman, particularly when the owner of the vessels has refused and/or has been unable to remove the vessels from the lake.

20.     I have reviewed the materials related to Duke Energy's request that the Unauthorized Vessels be removed from Lake Norman.  In my professional opinion, Duke Energy has acted reasonably, consistent with its enforcement of the Plan and Guidelines, and consistent with industry standards and practices for a FERC licensee, and Duke Energy is entitled to seek the removal of the Unauthorized Vessels from Lake Norman based upon the Plan and Guidelines, its responsibilities as a FERC licensee, and standards and practices applicable to FERC licensees.

21.     The Plan and Guidelines include a list of several "Lake Uses that Are not Authorized."[5]  These unauthorized lake uses include, specifically, "[a]bandonment of personal property including, but not limited to . . . watercraft" and, generally, "[a]ny other use that is determined to be unacceptable by Duke Energy, in its sole discretion."[6]  Duke Energy has determined that the Unauthorized Vessels have been essentially abandoned by Ms. Harwell and Lake Cruises, Inc.  Moreover, the unauthorized mooring of the Unauthorized Vessels in Lake Norman has been deemed an unacceptable use by Duke Energy, in its sole discretion, including for the reasons set forth above.  Duke Energy's determinations are reasonable, consistent with its enforcement of the Plan and Guidelines, its responsibilities as a FERC licensee, and standards and practices applicable to FERC licensees.

---

[5] Plan and Guidelines, § 7.B. at p. C-70– 71.

[6] Plan and Guidelines, § 7.B. at p. C-71.

22. The Plan and Guidelines also require that "[a]bandoned watercraft must be removed from within the Project Boundary."[7] Duke Energy has requested that the abandoned, Unauthorized Vessels be removed from Lake Norman. Duke Energy's request is reasonable, consistent with its enforcement of the Plan and Guidelines, its responsibilities as a FERC licensee, and standards and practices applicable to FERC licensees.

23. Further, based on my knowledge and experience in FERC-project resource management, alone, a FERC licensee also retains the right to seek removal of vessels, such as the Unauthorized Vessels, based upon general trespass principles. I am neither a judge, nor an attorney, and I do not intend to offer opinions concerning the law that a court or jury should apply. Any opinions in this report regarding issues such as trespass, etc., are based upon my qualifications and experience, and are not legal opinions.

24. In this case, it is my professional opinion that Duke Energy's actions have been reasonable, consistent with its enforcement of the Plan and Guidelines, and consistent with industry standards and practices for a FERC licensee. It is my further professional opinion that the Unauthorized Vessels should be removed as soon as possible from Lake Norman due to their non-compliance with the Plan and Guidelines, and the environmental, navigational, and safety risks that they pose.

25. I reserve the right to supplement my opinions as more information, testimony, and/or documents become available.

---

[7] Plan and Guidelines, § 2.A. at p. E-3.

FURTHER THE AFFIANT SAYETH NOT.

Michael A. Phillips

SUBSCRIBED TO AND SWORN TO before me this

22nd day of August , 2024

Notary Public for Coweta Co

My Commission Expires: 2/4/28

# Michael A. Phillips

201 Lattice Gate
Peachtree City, Ga. 30269
cell: 470-304-1041
email: map448@icloud.com

## Education

*Berry College*                                                        *Rome, Georgia*
Masters of Business Administration, 1982

*University of Georgia*                                              *Athens, Georgia*
Bachelor of Science, Forest Resource Management, 1977

## Experience

*39-year career with Georgia Power Company, 21 years involving FERC project resource management*

**Manager, Land Management**
**2008-2017**
**Georgia Power Company**                                                **Atlanta, Georgia**

- 	Managed FERC compliance for 9 hydroelectric projects consisting of 14 reservoirs. Worked closely with FERC staff in Washington D.C. office.
- 	Supervised 5 managers (1 corporate and 4 field office) responsible for day to day management of shoreline management plan, licensing and leasing program, public recreation and environmental program.
- 	Managed relicensing of FERC hydroelectric projects.
- 	Managed commercial and municipal water withdrawal permitting and associated issues.

**Lake Resource Manager, Bartletts Ferry**                      **2001-2008**
**Georgia Power Company**                                              **Columbus, Georgia**

- 	Managed day to day actives and issues involving the shoreline management plan, licensing and leasing program, public recreation and environmental program.

**Supervisor, Land Resources**
**1996-2001**
**Georgia Power Company**                                                **Atlanta, Georgia**

- 	Supervised hydroelectric project relicensing and FERC application

submittals.
- ☐ Provided consultation to 4 lake office managers.