# Exhibit F

# Order Granting Defendant's Motion to Alter or Amend and Motion for Summary Judgment

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### 3:19-cv-00311-RJC-DSC

|  |  |
|---|---|
| DOUGLAS P. EHMANN, | |
| **Plaintiff,** | |
| v. | **Order** |
| DUKE ENERGY CAROLINAS, LLC, | |
| **Defendant.** | |

This matter is before the Court on the parties' Joint Motion for Entry of Consent Order Granting Defendant's Motion to Alter or Amend and Motion for Summary Judgment, (Doc. No. 60), and Defendant's Motion to Alter or Amend, (Doc. No. 48). For the reasons agreed to by the parties, as set forth in their proposed consent order, (Doc. No. 60-1), **IT IS ORDERED** that:

1. The Joint Motion for Entry of Consent Order Granting Defendant's Motion to Alter or Amend and Motion for Summary Judgment, (Doc. No. 60), is **GRANTED**;

2. Defendant's Motion to Alter or Amend, (Doc. No. 48), is **GRANTED**; and

3. Defendant's Motion for Summary Judgment, (Doc. No. 38), is **GRANTED**.

Signed: February 9, 2022

Robert J. Conrad, Jr.
United States District Judge

1

| | |
|---|---|
| DOUGLAS P. EHMANN,<br><br>Plaintiff,<br><br>v.<br><br>DUKE ENERGY CAROLINAS, LLC, a<br>North Carolina limited liability company,<br><br>Defendant. | C.A. No.: 3:19-cv-311-RJC-DSC<br><br><br>**ORDER GRANTING DEFENDANT'S<br>MOTION TO ALTER OR AMEND AND<br>MOTION FOR SUMMARY JUDGMENT** |

This matter is before the Court on Defendant, Duke Energy Carolinas, LLC ("Defendant" or "Duke Energy"), Motion to Alter or Amend (Dkt. No. 48), which seeks to have the Court enter summary judgment as to all of Plaintiff's claims (Declaratory Judgment and Breach of Contract) and Duke Energy's counterclaims (Declaratory Judgment and Trespass) pursuant to Duke Energy's Motion for Summary Judgment (Dkt. No. 38). For the reasons set forth herein, with the consent of the parties, the Court **GRANTS** Duke Energy's Motion to Alter or Amend (Dkt. No. 48), **GRANTS** Duke Energy's Motion for Summary Judgment (Dkt. No. 38) and enters judgment in Duke Energy's favor.

## UNDISPUTED FACTS

1.      Duke Energy is the FERC Licensee for the Project.[1]  The Project is comprised of multiple reservoirs, including the Lake Norman reservoir.[2]

---

[1] Duke Energy 30(b)(6) Dep. (J. Huff) 9:5-9; 55:2-5; Ehmann Dep. 20:3-6.
[2] Duke Energy 30(b)(6) Dep. (J. Huff) 9:5-9.

1

2. As the Licensee for the Project, federal law requires Duke Energy to develop, implement, and enforce the Plan and Guidelines.[3] *Duke Energy Carolinas, LLC*, 153 FERC P 62134 at pp. 71, 73 (2015). The Plan and Guidelines provide procedures and criteria used to regulate activities within the Project Boundary, including "the specific requirements for lake neighbors to be granted the privilege of installing a facility within the FERC project boundaries."[4]

3. At the time this suit was brought, Plaintiff, Douglas P. Ehmann ("Plaintiff" or "Mr. Ehmann"), owned an unimproved lot adjoining the Lake Norman reservoir in Mecklenburg County, North Carolina ("the Ehmann Property").[5]

4. The Ehmann Property's property line terminates at the 760-foot elevation of Lake Norman,[6] which is also the Project Boundary. Plaintiff owns the land above the Project Boundary, and Duke Energy owns the property below the Project Boundary.[7]

5. At the time Plaintiff purchased the Ehmann Property, no dock was present.[8] Accordingly, Plaintiff submitted an application to Duke Energy for a Private Facilities Permit in order to construct a dock.[9]

6. On or about January 7, 2008, Duke Energy sent a letter to Mr. Ehmann notifying him that Duke Energy approved his application for a Private Facilities Permit.[10] The permit

---

[3] The phrase "Plan and Guidelines" is defined in Defendant's Memorandum in Support of Motion for Summary Judgment, *id.* at 23:15-24:1; 24:10-21; 66:5-10.

[4] *Id.* at 21:17-24.

[5] Hobbs Aff. ¶¶ 3-4 and Ex. A to Hobbs Aff. Plaintiff ultimately sold his lot during the pendency of this action, but the parties agree a judgment is the way to resolve this matter.

[6] Ehmann Dep. 20:17-21:14; Hobbs Aff. ¶¶ 3-4 and Ex. A to Hobbs Aff.

[7] Duke Energy 30(b)(6) Dep. (J. Huff) 56:25-57:2; Ehmann Dep. 20:17-21:14; Hobbs Aff. ¶¶ 3-4 and Ex. A to Hobbs Aff.

[8] Ehmann Dep. 21:16-18.

[9] Duke Energy 30(b)(6) Dep. (J. Huff) 16:25-17:4; Ehmann Dep. 21:19-22, 23:13-24:2; Pl.'s Application for Private Facilities Permit (DUKE_20).

[10] 1/7/08 Permit Application Approval Ltr. (DUKE_18); Ehmann Dep. 24:3-11; Duke Energy 30(b)(6) Dep. (J. Huff) 20:12-20.

allowed construction of an approved dock within the Project Boundary and adjacent to the Ehmann Property.[11]

7.      Plaintiff subsequently constructed the approved dock within the Project Boundary on land owned by Duke Energy.[12]

8.      In early 2014, Plaintiff contacted Joe R. Kluttz, III ("Mr. Kluttz") with Duke Energy Lake Services to notify him that Plaintiff was about to clear the Ehmann Property.[13]  Mr. Kluttz warned Plaintiff not to clear the property below the 760-foot elevation, i.e., the Project Boundary.[14]

9.      After having witnessed clearing by Plaintiff below the Project Boundary, on February 26, 2014, Mr. Kluttz notified Plaintiff that vegetation was cut from within the Project Boundary adjacent to the Ehmann Property.[15]  Plaintiff told Mr. Kluttz that he would "make absolutely certain not to work within the 760 line in the future."[16]

10.     In April 2016, Mr. Kluttz observed clearing activities on the Ehmann Property without a silt fence installed, and reported the condition to Charlotte-Mecklenburg Storm Water Services as a potential riparian buffer violation.[17]  Charlotte-Mecklenburg Storm Water Services conducted an inspection and found no violation.[18]

---

[11] 1/7/08 Permit Application Approval Ltr. (DUKE_18); Ehmann Dep. 24:3-15.

[12] Ehmann Dep. 24:3-18; Duke Energy 30(b)(6) Dep. (J. Huff) 56:25-57:2; Hobbs Aff. ¶¶ 3-4 and Ex. A to Hobbs Aff.

[13] Ehmann Dep. 92:3-16.

[14] *Id.*

[15] 2/26/14 E-mail from Pl. to J. Kluttz (EHMANN0001-2); Kluttz, III Dep. 23:4-18; Ehmann Dep. 30:5-31:16; Kluttz, III Aff. ¶¶ 4-5.

[16] 2/26/14 E-mail from Pl. to J. Kluttz (EHMANN0001-2 at EHMANN0002); Ehmann Dep. 30:5-31:16; Kluttz, III Dep. 24:17-25:3.

[17] Charlotte-Mecklenburg Storm Water Services Service Request Form (Ex. 3 to J. Kluttz, III Dep.); Kluttz, III Dep. 22:3-10; 31:7-12; 32:23-33:4.

[18] Charlotte-Mecklenburg Storm Water Services Service Request Form (Ex. 3 to J. Kluttz, III Dep.).

11. In early December 2017, Dennis J. Whitaker ("Mr. Whitaker") with Duke Energy Lake Services became aware of further clearing on the Ehmann Property.[19] Mr. Whitaker contacted Mr. Ehmann and reminded him that no clearing or vegetation removal should occur on Duke Energy property or within the Project Boundary.[20]

12. On January 26, 2018, Mr. Ehmann cut vegetation within the Project Boundary.[21] Duke Energy Lake Services met with Mr. Ehmann and explained that vegetation removal within the Project Boundary was a violation of the Plan and Guidelines.[22]

13. On November 21, 2018, Mr. Ehmann directed a tree contractor to perform work on a pine tree, a tree in front of the dock (the canopy tree at issue), and limbs at the street light.[23] The tree contractor removed the canopy tree, which measured greater than 24 inches in diameter at the stump.[24]

14. The canopy tree that Mr. Ehmann testified was unintentionally removed was located within the Project Boundary, which Plaintiff admitted under oath.[25]

15. The cutting of the canopy tree was a violation of the Plan and Guidelines, which Plaintiff admitted under oath.[26]

16. In response to the canopy tree removal, and by letter dated November 26, 2018, Duke Energy notified Mr. Ehmann of the following violation of the Plan and Guidelines:

---

[19] 12/5/17 E-mail from D. Whitaker to R. Eubanks (DUKE_98-106 at DUKE_100).
[20] *Id.*; Duke Energy 30(b)(6) Dep. (J. Huff) 25:10-24; 26:14-18.
[21] Kluttz, III Dep. 38:19-39:3, 39:14-25, 40:16-41:6; Kluttz, III Aff. ¶¶ 4-5.
[22] 2/7/19 E-mail from J. Kluttz to D. Whitaker (cc: recipients omitted) (DUKE_70-74 at DUKE_72); Kluttz, III Dep. 45:4-46:4.
[23] 11/21/18 Text Message (DUKE_26); Ehmann Dep. 47:14-15, 49:14-50:4, 47:22-48:6.
[24] Photograph (DUKE_106); Ehmann Dep. 47:10-15; 1/30/19 E-mail from J. Kluttz to L. Gaffney (DUKE_75-77 at DUKE_75).
[25] Ehmann Dep. 54:12-16; Hobbs Aff. ¶¶ 3-4 and Ex. A to Hobbs Aff.; Kluttz, III Aff. ¶¶ 4-5.
[26] Ehmann Dep. 54:12-19.

4

"[u]nauthorized major cutting of the vegetated area within the FERC Project Boundaries."[27] Duke Energy further notified Mr. Ehmann that, as a result of his violation of the Plan and Guidelines, Duke Energy was revoking his January 7, 2008 Private Facilities Permit, and was requiring that any structures or facilities that were installed under the permit be removed from the Project Boundary immediately.[28] Duke Energy also required that Mr. Ehmann submit for approval an Engineered Restoration Plan detailing how he would restore the Project Boundary back to its original condition.[29] Duke Energy further notified Mr. Ehmann that "[t]he applicable penalty for this specific violation includes the removal of the pier/dock from the Project property and the loss of consideration for lake use permitting activities for five (5) years, subject to successful plan restoration."[30]

17. After no action was taken by Mr. Ehmann in response to the November 26, 2018 letter, Duke Energy sent another letter to Mr. Ehmann on December 11, 2018.[31]

18. Then, after no action was taken by Mr. Ehmann in response to the December 11, 2018 letter, another letter was sent to Mr. Ehmann on December 27, 2018, reiterating the violation and items originally discussed in the November 26, 2018 letter.[32]

19. After Mr. Ehmann did not take action in response to the November 26, 2018 or December 11, 2018 letters, Duke Energy sent another letter on January 22, 2019.[33] In that letter,

---

[27] 11/26/18 Ltr. from J. Kluttz, III to D. Ehmann (DUKE_27); Duke Energy 30(b)(6) Dep. (J. Huff) 36:12-20.

[28] *Id.*; Ehmann Dep. 55:4-56:11.

[29] 11/26/18 Ltr. from J. Kluttz, III to D. Ehmann (DUKE_27).

[30] *Id.*

[31] 12/11/18 Ltr. from J. Kluttz, III to D. Ehmann (DUKE_108); Duke Energy 30(b)(6) Dep. (J. Huff) 41:17-42:3; Ehmann Dep. 60:1-13.

[32] 12/27/18 Ltr. from J. Kluttz, III to D. Ehmann (DUKE_109); Duke Energy 30(b)(6) Dep. (J. Huff) 42:9-16; Ehmann Dep. 63:21-64:4.

[33] 1/22/19 Ltr. from C. King to D. Ehmann (DUKE_6-8).

Case 3:22-cv-00041-MOC-DSC Document 61 Filed 03/27/25 Page 7 of 25

Duke Energy acknowledged that Mr. Ehmann "failed to comply with the earlier demands made by Duke Energy."[34] Duke Energy notified Mr. Ehmann that "no lake use permits for construction, shoreline stabilization, excavation, or any other lake use permit activities will be considered within the Project Boundary in front of your property for a period of five (5) years."[35] Mr. Ehmann subsequently submitted a Shoreline Restoration plan on February 12, 2019,[36] but has failed to remove his dock from within the Project Boundary and off Duke Energy's fee-owned property despite the revocation of the permit allowing it to be there.[37]

## **DISCUSSION**

### I. **Summary Judgment Standard**

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Fed. Deposit Ins. Corp. v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013); *Shaw v. N.C. Dep't of Pub. Safety*, 372 F. Supp. 3d 307, 308 (M.D.N.C. 2019). The purpose of summary judgment is to resolve cases or significant portions of cases when trial is unnecessary because there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Blakely v. Wards*, 738 F.3d 607, 611 (4th Cir. 2013). A summary judgment motion pierces the pleadings to determine whether the parties have proof for their claims and defenses such that trial is needed. This distinguishes between mere allegations of a dispute in the pleadings and a real controversy requiring trial. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

---

[34] *Id.*
[35] *Id.*
[36] 2/12/19 Shoreline Restoration (DUKE_2-5).
[37] Ehmann Dep. 56:12-14; 60:14-19.

This Court's summary judgment inquiry is whether the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. The moving party bears the initial burden of demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.,* 477 U.S. at 325. If the "moving party discharges its burden . . ., the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *McLean v. Patten Cmtys., Inc.,* 332 F.3d 714, 718-19 (4th Cir. 2003) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87). The non-moving party's evidence must be probative, not merely colorable, *Anderson*, 477 U.S. at 249, cannot be "conclusory statements[] without specific evidentiary support," *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998), and must "contain admissible evidence and be based on personal knowledge." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996). Summary judgment should be granted "unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented." *McLean*, 332 F.3d at 719 (citing *Anderson*, 477 U.S. at 247–48).

## II. Duke Energy is Entitled to an Award of Summary Judgment as to Its Counterclaim for Declaratory Judgment, and an Award of Summary Judgment as to Plaintiff's Declaratory Judgment Claim.

Plaintiff and Duke Energy have competing claims for Declaratory Judgment[38] that, in essence, seek a finding that Duke Energy's action in assessing penalties against Plaintiff was either proper or improper. The Court finds that there is no genuine issue of material fact that Plaintiff

---

[38] Plaintiff's Declaratory Judgment claim seeks a declaration from this Court that Duke Energy acted improperly and beyond the scope of its authority in revoking Plaintiff's dock permit. Duke Energy's Declaratory Judgment counterclaim seeks a declaration by this Court that Duke Energy has full authority to apply and enforce the provisions of the Plan and Guidelines, that Plaintiff's conduct in cutting down the canopy tree was a violation of the Plan and Guidelines, that the penalties levied by Duke Energy were appropriate, that Plaintiff's dock is now unpermitted and must be removed, and that Plaintiff be required to remove the dock at his expense or be liable for the actual cost incurred by Duke Energy for removal of the same.

violated the Plan and Guidelines and that the penalties assessed by Duke Energy, including the revocation of Plaintiff's dock permit, were appropriate. This holding is consistent with FERC's consideration of this matter as well. After Duke Energy filed its Motion for Summary Judgment (Dkt. No. 38), Plaintiff sought review of Duke Energy's actions by FERC, which found them to be appropriate by a ruling dated December 2, 2021, which ruling was filed with the Court on December 9, 2021 (Dkt. No. 58). Plaintiff did not timely seek reconsideration or an appeal of the FERC ruling. Summary Judgment is awarded in Duke Energy's favor as to both Duke Energy's and Plaintiff's Declaratory Judgment claims.

### A. Plaintiff Has No Legal Right to Have a Dock Within the Project Boundary.

There is no genuine issue of material fact that Plaintiff does not possess any property rights whatsoever within the Project Boundary, which is an area undisputedly owned in fee simple by Duke Energy. Accordingly, Plaintiff's ability to place a dock within the Project Boundary is solely dependent upon Plaintiff acquiring Duke Energy's permission to place a dock within the Project Boundary. In short, Plaintiff's ability to place a dock within the Project Boundary is a privilege, not a right, which can be revoked by Duke Energy.

The Plan and Guidelines, which are federally mandated and approved, are explicit in their directive that activities conducted within the Project Boundary, such as building a dock, are privileges that can only be granted with authorization from Duke Energy. The Plan and Guidelines provide that "[a]djoining property owners should be aware that conducting activities within the Project Boundaries of a federally-licensed hydroelectric project (e.g. Catawba-Wateree Project) *is a privilege that can only be granted with authorization from the Licensee*."[39]

---

[39] *Plan and Guidelines*, § 4.C.1. at p. C-52 (emphasis added).

Additionally, the FERC Order granting Duke Energy the license to operate the Project specifically discusses the "permission" Duke Energy may grant to use Project lands and waters. The FERC Order provides that Duke Energy "must have the authority ***to <u>grant permission</u> for certain types of use and occupancy of project lands and waters*** and to convey certain interests in project lands and waters for certain types of use and occupancy, without prior Commission approval." *Duke Energy Carolinas, LLC*, 153 FERC P 62134 at p. 73 (emphasis added). The Order further defines the types of use and occupancy of Project lands and waters that FERC contemplates, and provides as follows:

> "(b) **The type of use and occupancy of project lands and waters for which the licensee *may grant permission*** without prior Commission approval are: . . . ; (2) non-commercial piers, landings, ***boat docks***, or similar structures and facilities that can accommodate no more than 10 water craft at a time and where said facility is intended to serve single-family type dwellings . . . ."

*Id.* at p. 74 (emphasis added). The Order's use of the term "may" establishes that the permission given by Duke Energy is fully permissive and discretionary. "When a statute uses a permissive term such as 'may' rather than a mandatory term such as 'shall,' this choice of language suggests that Congress intends to confer some discretion on the agency, and that courts should accordingly show deference to the agency's determination." *Coal. for Parity, Inc. v. Sebelius*, 709 F. Supp. 2d 10, 20 (D.D.C. 2010) (quoting *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1401 (D.C.Cir.1995)).

The uncontroverted testimony in this case is that Plaintiff's ability to maintain a dock within the Project Boundary is not a right, but a privilege granted at the discretion of Duke Energy that is subject to revocation in accordance with the Plan and Guidelines. The testimony of Jennifer Huff, Duke Energy's Director of Lake Services, made it clear that Duke Energy is under no obligation to allow facilities to be built within the Project Boundary and, when facilities are allowed to be built, it is only with the permission of Duke Energy.

**Q**. . . .What provision of the guidelines allows Duke to permanently sterilize a lot?

**A**. *Shoreline Management Plan does not obligate us to allow lake neighbors to build structure within the lake. It specifies the conditions under which we can allow it, but we are not obligated to allow lake neighbors to build within the lake.*

**Q**. Okay. But would you agree that that is not a penalty mentioned in the guidelines?

**A**. Well, the *Shoreline Management Plan specifies that it is a privilege to put things within the FERC project boundary.*[40]

\* \* \*

**Q**. How does Duke consider the permits it does issue for docks in terms of a description of the legal status of the permit? In other words, is it a license? Is it an easement? Is it a contract? How does Duke -- what does Duke consider the permit to be? . . .

**THE WITNESS**: Well, it is not -- *it's simply permission*. Just as if I would -- I guess I'd have to use an analogy. *It's the same as if a neighbor allows someone to put a chair on their property and then we simply allow it*. . . .

**Q.** Okay. And just for the record, does Duke actually own the property below the 760 line?

**A.** Yes. In this location, yes.

**Q.** Okay. So it's a -- *it's permission to use a portion of the Duke property; is that fair to say?*

**A.** *Yes.*

**Q.** Okay.

**A.** For the specific use that was requested, yes.

**Q.** A restricted permission.

**A.** That sounds correct.[41]

Similarly, Duke Energy's FERC project resource management expert, Michael A. Phillips, opined that "Mr. Ehmann, as the adjacent landowner, has no right, merely a privilege that may be granted or revoked by Duke Energy, to conduct activities, including the construction and maintenance of a dock, within the Project Boundary."[42] Plaintiff has presented no testimony, expert or otherwise, to contradict the fact that, absent permission from Duke Energy, Plaintiff has no legal right to construct or maintain a dock within the Project Boundary.

---

[40] Duke Energy 30(b)(6) Dep. (J. Huff) 48:10-21.

[41] *Id.* at 56:13-57:9.

[42] Phillips Expert Rpt. p. 7; Phillips Dep. 61:18-62:4, 66:1-11.

Plaintiff's own actions show that Plaintiff's ability to own and maintain a dock within the Project Boundary is contingent upon first obtaining permission from Duke Energy. Before building the dock, Plaintiff submitted an application for a Private Facilities Permit in order to build the dock. Had Plaintiff possessed a legal right to build a dock within the Project Boundary, absent the permission given to him by Duke Energy, there would have been no need for him to even request approval from Duke Energy in the first place.

Additionally, Plaintiff has not pointed to any document, including any document recorded in the Register of Deeds' Office, granting Plaintiff a property right to the land within the Project Boundary or otherwise giving him the right to build a dock within the Project Boundary. Plaintiff concedes that his property line stops at the 760-foot elevation, or Project Boundary, of Lake Norman.[43] In turn, as noted above, Duke Energy owns the property beginning at the 760-foot elevation, or Project Boundary, of Lake Norman. With Plaintiff's property rights ceasing at the Project Boundary, Plaintiff has no legal right to construct or maintain a dock within the Project Boundary and on Duke Energy's property. Plaintiff's ability to construct and maintain a dock within the Project Boundary is a privilege granted by Duke Energy—a privilege which has undisputedly been revoked, and the dock must be removed because it constitutes a trespass upon Duke Energy's fee-owned property within the Project Boundary. Plaintiff's dock permit was a permissive license to use property within the Project Boundary, which has been undisputedly revoked. *Hill v. Smith*, 51 N.C. App. 670, 675, 277 S.E.2d 542, 545 (1981) ("It is well established that a license does not create a property interest in land, and it is equally settled that a license is revocable at the will of the licensor.") (citing references omitted).

**B.** **Duke Energy Is Required by Federal Law to Implement and Enforce the Provisions of the Plan and Guidelines.**

---

[43] Ehmann Dep. 20:17-21:14.

11

The Plan and Guidelines, which govern, in part, the relationship between Duke Energy, as the Licensee, and adjoining landowners, is a federally mandated and approved, regulation. The Federal Power Act ("FPA"), in part, authorizes FERC to issue licenses for projects "necessary or convenient . . . for the development, transmission, and utilization of power across, along, from, or in any of the streams . . . over which Congress has jurisdiction." 16 U.S.C. § 797(e). The FPA requires that FERC issue licenses that FERC determines are "best adapted" for power development and other public uses of the waters. 16 U.S.C. § 803(a). The FPA further requires that the licensee maintain the project and conform to FERC's Rules. 16 U.S.C. § 803(c).

Accordingly, through FERC Order *Duke Energy Carolinas, LLC*, 153 FERC P 62134, FERC issued a new license to Duke Energy for the Project. *Duke Energy Carolinas, LLC*, 153 FERC P 62134 at p. 1 ("As discussed below, this order issues a new license for the Catawba-Wateree Project authorizing a total installed capacity of 819.102 MW.") The FERC Order provides, in part, that Duke Energy "***must implement*** the Catawba-Wateree Shoreline Management Plan (SMP) approved by . . . [FERC]. . . and amended under the prior license." *Id.* at p. 71 (emphasis added); *see also Id.* at p. 73 ("Upon Commission approval, the licensee ***must implement*** the updated plan, including any changes required by the Commission.) (emphasis added).[44]

The same Order also requires that Duke Energy enforce the Plan and Guidelines.

> For those purposes, ***the licensee must also have continuing responsibility to supervise and control the use and occupancies*** for which it grants permission, and to monitor the use of, and ensure compliance with the covenants of the instrument of conveyance for, any interests that it has conveyed, under this article. If a permitted use and occupancy violates any condition of this article or any other condition imposed by the licensee for protection and enhancement of the project's scenic, recreational, or other environmental values, or if a covenant of a conveyance made under the authority of this article is violated, ***the licensee***

---

[44] *See also* Duke Energy 30(b)(6) Dep. (J. Huff) 24:10-21; 55:19-22; 66:5-10.

12

***must*** *take any lawful action necessary to correct the violation. **For a permitted use or occupancy, that action includes, if necessary, canceling the permission to use and occupy the project lands and waters and requiring the removal of any non-complying structures and facilities.***

*Duke Energy Carolinas, LLC*, 153 FERC P 62134 at p. 73 (emphasis added). Based on this federal law, Duke Energy is federally mandated to implement and enforce the provisions of the Plan and Guidelines.

> **C.** **There Is No Genuine Issue of Material Fact That Duke Energy Properly Followed the Plan and Guidelines in Assessing Penalties Against Plaintiff for Removing Vegetation From Within the Project Boundary.**
>
> > i. *There Is No Dispute That the Plan And Guidelines Prohibit the Removal of Vegetation From Within the Project Boundary, and That Plaintiff Removed Vegetation From Within the Project Boundary.*

The federally approved and mandated Plan and Guidelines are explicit in their prohibition of the removal of vegetation from within the Project Boundary. The Plan and Guidelines provide as follows:

> 1. ***The Duke Energy property within the Project Boundaries shall be maintained in a vegetated forested condition, where existing***, that is typical of forested areas of the region. A properly vegetated area ***shall include canopy trees***, sub-canopy trees, shrubs, herbaceous plants, and forest floor leaf and humus layers.
>
> 2. ***No clearing, thinning, spraying, planting, or sowing of any vegetation***, except for removal of hazardous tress in imminent danger of falling on an individual, a structure or a proposed structure (constructed outside the Project Boundaries), or removal of non-native invasive plants and poisonous plants, ***shall be undertaken by any person or party without written concurrence from DE-LS***, unless the alteration is consistent with an approved activity authorized by local ordinance or the Catawba River Riparian Buffer Rules in North Carolina.[45]

There is no dispute that Plaintiff, without authorization from Duke Energy, removed vegetation from within the Project Boundary in violation of the Plan and Guidelines in 2014, cut vegetation

---

[45] *Plan and Guidelines*, § 8.A. at p. C-81 (emphasis added).

in 2018, and then again with the canopy tree in November 2018, all in violation of the Plan and Guidelines.[46] In the similar case of *Appalachian Power Co. v. Arthur*, 39 F.Supp.3d 790, 793 (W.D. Va. 2014), defendant landowners constructed numerous docks on their property, and within the project boundary, in violation of the shoreline management plan. The court, in part, found that the FERC licensee received regulatory authority from FERC to regulate the Project's boundaries in compliance with the shoreline management plan and granted the requested injunctive relief, including removal of portions of the nonconforming structures under the shoreline management plan. *Id.* at 796-97. The same deference to the determination of Duke Energy, as FERC licensee, regarding the facts and circumstances of this case, is warranted.

        ii.     *Duke Energy Properly Assessed Penalties Against Plaintiff Pursuant to the Requirements of the FERC Order and the Plan and Guidelines.*

The Plan and Guidelines specify numerous penalties that are required to be imposed by Duke Energy for violation of the Plan and Guidelines. More specifically, the Plan and Guidelines provide as follows:

    **D.     Duke Energy Properly Administered the Plan and Guidelines' Provisions Regarding Violations.**

1.     <u>Penalties</u> – DE-LS representatives will issue Stop-Work Directives for any violations that are detected within the Project Boundaries of a reservoir. Consequences for violations ***will*** include ***one or more*** of the following:

- Unwanted delays;

- Loss of security deposits;

- Suspension or ***cancellation of approved applications***;

- Increases in fees;

---

[46] Ehmann Dep. 54:12-19.

14

- Modification or removal of non-complying structures and restoration of disturbed areas at the owner's expense; and

- ***Loss of any consideration for future reservoir use applications***.[47]

The Plan and Guidelines also provide examples of specific violations and their applicable penalties. One of the example violations and corresponding penalties is the exact violation for which Plaintiff was cited –"[u]nauthorized major cutting of the vegetated area within the FERC Project Boundaries." The Plan and Guidelines provide as follows:

2. <u>Violation Examples</u> – Examples of specific violations and their applicable penalties include the following. . . .

- ***Unauthorized major cutting of the vegetated area (see Section 8) within the Project Boundaries (existing pier/dock):*** Removal of the pier/dock from Project property and restoration with approved native vegetation. ***Loss of consideration for lake use permitting activities for up to five years depending on the severity and subject to successful plant restoration***.[48]

Additionally, the FERC Order requires that Duke Energy take action to correct a violation of the Plan and Guidelines, and provides that such action include cancelling the permission to use and occupy the Project lands and waters and requiring the removal of any non-complying structures. Specifically, the FERC Order provides that

[i]f a permitted use and occupancy violates any condition of this article or any other condition imposed by the licensee for protection and enhancement of the project's scenic, recreational, or other environmental values, or if a covenant of a conveyance made under the authority of this article is violated, ***the licensee <u>must</u> take any lawful action necessary to correct the violation. For a permitted use or occupancy, that action includes, if necessary, canceling the permission to use and occupy the project lands and waters and requiring the removal of any non-complying structures and facilities.***

*Duke Energy Carolinas, LLC*, 153 FERC P 62134 at p. 73 (emphasis added).

---

[47] *Plan and Guidelines*, § 4.D.1. at p. C-53-54 (emphasis added).
[48] *Plan and Guidelines*, § 4.D.2. at p. C-54 (emphasis added).

15

Consistent with the requirements of the Plan and Guidelines and the examples set forth therein, as well as the FERC Order, Duke Energy revoked Plaintiff's Private Facilities Permit, required that Plaintiff remove the dock, required that Plaintiff submit for approval an Engineered Restoration Plan detailing how he would restore the Project Boundary back to its original condition, and informed Plaintiff that he would not be considered for lake use permitting activities for a period of five (5) years following removal of the dock and successful plant restoration. Plaintiff has contended, in essence, that the penalty levied by Duke Energy was too severe and that the violation should have been considered a "minor" cutting, resulting in a lesser penalty.[49] However, Plaintiff has presented no evidence to substantiate his position that the actions taken by Plaintiff constitute a "minor" cutting. The uncontroverted testimony of both well-experienced Duke Energy personnel responsible for implementing the Plan and Guidelines, as well as Duke Energy's retained independent subject matter expert in FERC project resource management, is that the penalties levied by Duke Energy were appropriate. Plaintiff's subjective belief that the cutting should be considered "minor" does not create an issue of fact sufficient to survive summary judgment. *Goldberg v. B. Green and Co.*, 836 F.2d 845, 848 (4th Cir.1988) (noting conclusory statements will not satisfy plaintiff's burden in responding to summary judgment motion).

Under the FPA, FERC has the power to issue licenses to construct, operate, and maintain reservoirs, among other things, for the development, transmission, and utilization of power. 16 U.S.C.A. § 797(e). "FERC may delegate its responsibility to ensure that the uses of the project lands are consistent with the public interest to the licensees." *Tri-Dam v. Schediwy*, No. 1:11-CV-01141-AWI, 2014 WL 897337, at *8 (E.D. Cal. Mar. 7, 2014), amended, No.

---

[49] Plaintiff also contends that he was entitled to a hearing prior to the revocation of his Private Facilities Permit. However, the uncontroverted testimony is that no such right exists. Duke Energy 30(b)(6) Dep. (J. Huff) 37:11-16; 39:11-16.

Case 3:22-cv-00041-MOC-DCK Document 61 Filed 03/26/25 Page 18 of 25

111CV01141AWIMJS, 2014 WL 12778828 (E.D. Cal. May 5, 2014) (quoting *Union Electric Co., d/b/a AmerenUE*, 90 FERC ¶ 61,249, at *61833 (2000)).  In this instance, FERC delegated the regulation of the Project to Duke Energy through the issuance of the license to operate the Project and through FERC's adoption of the Plan and Guidelines.  See *Tri-Dam*, No. 1:11-CV-01141-AWI, 2014 WL 897337, at *8 (noting that FERC delegated the regulation of the project lands to the licensee through the issuance of the license to operate the project and through FERC's adoption of the licensee's shoreline management plan); see also *VA Timberline, L.L.C. v. Appalachian Power Co.*, 343 F. App'x 915, 917 (4th Cir. 2009) (same).  FERC's orders are sustained by courts where the order is "not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *ARCO Oil & Gas Co. v. F.E.R.C.*, 932 F.2d 1501, 1502 (D.C. Cir. 1991) (quoting *Michigan Consolidated Gas Co. v. FERC*, 883 F.2d 117, 120 (D.C.Cir.1989)).  Courts

> "must also give substantial deference to . . . [FERC's] interpretation of its own regulations.  In other words, . . . [the court] must defer to . . . [FERC's] interpretation unless an alternative reading is compelled by the regulation's plain language or by other indications of  . . . [FERC's] intent at the time of the regulation's promulgation."

*Cty. of Butte, Cal. v. F.E.R.C.*, 445 F. App'x 928, 930 (9th Cir. 2011) (quoting *Cal. Trout v. F.E.R.C.*, 572 F.3d 1003, 1012–13 (9th Cir.2009)).  Based on the foregoing, Duke Energy's actions in performing duties delegated to it by FERC should also be reviewed under an arbitrary and capricious standard with substantial deference given to Duke Energy's interpretation of its Plan and Guidelines.

However, even if the standard of review were *de novo*, Duke Energy would still be entitled to summary judgment.  As an initial matter, the tree that Plaintiff removed was substantial in size with a diameter greater than 24 inches.  Additionally, the tree was a canopy tree that was very

valuable to the aesthetics of the area.[50]  Another consideration is the number of past warnings and prior instances of vegetation removal from within the Project Boundary.[51]  Prior to the November 21, 2018 removal of the canopy tree, Plaintiff was warned on at least four (4) occasions about the prohibition against removing vegetation from within the Project Boundary—in early 2014 before he began clearing the lot, in February 2014 after he removed vegetation from within the Project Boundary, in early December 2017 when additional clearing of the lot occurred, and again in January 2018 when he again removed vegetation from within the Project Boundary.

Furthermore, the November 21, 2018 canopy tree removal was the third time vegetation was cut or removed from within the Project Boundary by Mr. Ehmann.  In early 2014, Mr. Ehmann removed vegetation from within the Project Boundary and was warned about doing so in the future. Again, on January 26, 2018, Plaintiff's contractors cut vegetation from within the Project Boundary and Plaintiff was, once again, warned about the removal of vegetation from within the Project Boundary.  Despite the four (4) prior warnings and past violation of the Plan and Guidelines for removing vegetation, the canopy tree was removed on November 21, 2018.  The undisputed occasions of warnings given to Plaintiff, as well as the prior instances in which Plaintiff removed vegetation from within the Project Boundary, establish the severity of Plaintiff's actions and the appropriateness of the penalties assessed by Duke Energy.

Plaintiff has presented no expert testimony to establish that Plaintiff's actions constitute a "minor" cutting and that less severe penalties were warranted.  Duke Energy's FERC project resource management expert, however, opines that Duke Energy correctly determined that Plaintiff's November 21, 2018 removal of the canopy tree was "major" and that the penalties

---

[50] Phillips Dep. 60:1-13.
[51] Phillips Expert Rpt. pp. 9-13.

imposed for that violation, including the revocation of Plaintiff's Private Facilities Permit, was appropriate.[52]

The uncontroverted evidence in this case is that Plaintiff's ability to construct and maintain a dock within the Project Boundary, and on Duke Energy's property, is a privilege, not a right, granted by Duke Energy. When there is a violation of the Plan and Guidelines by a permit holder, such as Plaintiff, Duke Energy is required by federal law to take action, which it did here, and in a way that is specifically contemplated by the Plan and Guidelines. There is no genuine issue of material fact that Duke Energy acted in conformance with the requirements of the FERC Order and Plan and Guidelines in assessing penalties against Plaintiff. Accordingly, an award of summary judgment in Duke Energy's favor is proper on Duke Energy's and Plaintiff's Declaratory Judgment claims.

**III.     There Is No Genuine Issue of Material Fact That the Presence of Plaintiff's Unpermitted Dock Within the Project Boundary, and on Duke Energy's Property, Constitutes an Unauthorized Entry Onto Duke Energy's Property.   Therefore, Summary Judgment Is Proper as to Duke Energy's Trespass Claim.**

Duke Energy's counterclaim for Trespass contends that Plaintiff's dock, which to this day is present on Duke Energy's property and within Project lands and waters, is unpermitted and is, therefore, an unauthorized entry on Duke Energy's property and constitutes a trespass. "'The elements of trespass to real property are: (1) possession of the property by the plaintiff when the alleged trespass was committed; (2) an unauthorized entry by the defendant; and (3) damage to the plaintiff from the trespass.'" *Graham v. Deutsche Bank Nat. Tr. Co.,* 239 N.C. App. 301, 306, 768 S.E.2d 614, 617 (2015) (quoting *Woodring v. Swieter*, 180 N.C. App. 362, 376, 637 S.E.2d 269, 280 (2006)).

---

[52] Phillips Expert Rpt. pp. 8-13.

As to the first element of a trespass claim, there is no dispute that Duke Energy is, and was, in possession of the subject property where the dock is located—namely, the Project lands adjacent to the Ehmann Property—prior to Plaintiff's purchase of the Ehmann Property. The uncontroverted evidence is that Plaintiff owns the property above the Project Boundary elevation of 760 feet, and that Duke Energy owns the property below the Project Boundary.

The second element of a trespass claim—unauthorized entry by the defendant—is met via Duke Energy's revocation of Plaintiff's dock permit. As discussed at length above in section II.A., Plaintiff has no property rights in the land within the Project Boundary. Instead, the only authority provided to Plaintiff to construct a dock within the Project Boundary was the dock permit issued by Duke Energy. When Duke Energy revoked the dock permit, the presence of the dock became an unauthorized entry by Plaintiff into the property. *Graham*, 239 N.C. App. at 307, 768 S.E.2d at 618 (citing references omitted). ("[A] defendant's wrongful maintenance of an encroaching structure is itself a 'trespass each day it so remains' and constitutes a distinct wrong. . . . . Thus, because it is undisputed that Defendant failed to remove the encroaching structures from Plaintiff's property, the second element of Plaintiff's trespass claim is likewise established."). In the similar case of *Tri-Dam v. Yick*, No. 111CV01301AWISMS, 2016 WL 4061348, at *3 (E.D. Cal. July 28, 2016), which involved a FERC project and a FERC adopted shoreline management plan, the court found that the landowner's failure to obtain a permit from the FERC licensee to install or maintain his dock was a violation of the applicable code and a nuisance per se. Here, Plaintiff's failure to remove the dock, which is present on Duke Energy's property without permission, constitutes a trespass.

As to the third and final element of Duke Energy's trespass claim, there is no genuine issue of material fact that Duke Energy will incur damages as a result of Plaintiff's trespass. Under

North Carolina law "'[w]here a trespass is shown the party aggrieved is entitled to at least nominal damages.'" *Spirax Sarco, Inc. v. SSI Eng'g, Inc.*, 122 F. Supp. 3d 408, 433 (E.D.N.C. 2015) (quoting *Lee v. Stewart*, 218 N.C. 287, 287, 10 S.E.2d 804, 805 (1940)). "'Actual damages do not have to be proven, since any unauthorized entry at least entitles plaintiff to nominal damages.'" *Spirax*, 122 F. Supp. 3d at 433 (quoting *Taha v. Thompson*, 120 N.C.App. 697, 704, 463 S.E.2d 553, 557 (1995)). Because Duke Energy would at least be entitled to nominal damages, summary judgment as to liability on Duke Energy's trespass cause of action is proper as there is no genuine issue of material fact that all three (3) elements of Duke Energy's trespass claim are met.[53]

**IV.  The Law of the Case Has Established That the January 7, 2008 Letter Is Not a Contract.  Therefore, Summary Judgment Should Be Awarded as to Plaintiff's Breach of Contract Claim.**

Plaintiff's first breach of contract claim, which contended that the January 7, 2008 notification letter from Duke Energy to Plaintiff ("Letter") was a contract, was dismissed for failure to state a claim by this Court (Dkt. No. 16). The dismissal was based, in part, on the finding made by Magistrate Judge Cayer, which was adopted by this Court, that the Letter was "not a contract in either form or substance" (Dkt. Nos. 11 & 16). Despite Judge Cayer's finding, Plaintiff amended his Complaint to reassert his breach of contract claim (Dkt. No. 21). This time, Plaintiff contended that the Letter and the Plan and Guidelines, *together,* constitute a contract (Dkt. No. 21).

Duke Energy filed a 12(b)(6) Motion to Dismiss in response (Dkt. No. 22). After the matter was fully briefed, Magistrate Judge Cayer issued a Memorandum and Recommendation recommending that Duke Energy's Motion to Dismiss be granted (Dkt. No. 29). Judge Cayer's

---

[53] In order to secure Plaintiff's consent to this Order, Duke Energy has agreed not to pursue a money judgment for trespass against Plaintiff, but still seeks a determination that a trespass occurred and any continued presence of the dock constitutes a trespass.

recommendation found that "[t]his Court's previous determination that the January 7, 2008 letter was not a contract is the law of the case here" (Dkt. No. 29). Judge Cayer further found that the

> SMG combined with the letter is not a contract. . . . The SMP is a federally mandated document for the comprehensive management of shoreline activities on Lake Norman. The SMG includes guidelines subject to FERC's authority allowing Duke Energy to issue permits for docks and other recreational facilities on Lake Norman. Plaintiff did not negotiate or sign the SMG. Those guidelines were already in place at the time [Plaintiff] received his permit. The SMG . . . [is] not a contract between Plaintiff and Duke Energy.

[Mem. and Recommendation, p. 7 (Dkt. No. 29)]. By Order dated August 26, 2021 (Dkt. No. 45), this Court adopted Judge Cayer's Memorandum and Recommendation, which Plaintiff then appealed to the Fourth Circuit. Plaintiff has agreed to abandon that appeal and Duke Energy is granted summary judgment as to Plaintiff's Breach of Contract claim to the extent that it has not already been determined based upon this Court's August 26, 2021 Order (referenced above) dismissing that claim.

## CONCLUSION & HOLDING

For the foregoing reasons, this Court **GRANTS** Duke Energy's Motion to Alter or Amend (Dkt. No. 48) and Motion for Summary Judgment (Dkt. No. 38). Accordingly, Duke Energy is granted summary judgment as to its counterclaims for Declaratory Judgment and Trespass and Plaintiff's claims for Declaratory Judgment and Breach of Contract, all as set forth more fully above.

The Court specifically finds that the dock constitutes a trespass on Duke Energy's real property and Duke Energy may take whatever action it deems appropriate consistent with the Plan and Guidelines to have it removed.

The parties shall each bear their own attorneys' fees and costs.

The parties have waived the right to seek reconsideration of or to appeal this Order.

Plaintiff has agreed to abandon his appeal of the August 26, 2021 Order to the Fourth Circuit Court of Appeals and will cooperate with Defendant to file any necessary documents to formalize that abandonment with this Court and/or the Fourth Circuit Court of Appeals.

Plaintiff has agreed to consent to the FERC ruling in this case and will cooperate with Defendant to file appropriate document(s) to formalize that consent with FERC.

Following entry of this Order, the parties stipulate and agree that neither shall have any liability whatsoever to the other related to the above-referenced dock, the above-captioned litigation (including the claims and counterclaims made therein, including any claimed damages), the above-referenced appeal, and/or the above-referenced FERC allegation of non-compliance, except the duties of cooperation noted above regarding the abandonment of Plaintiff's appeal to the Fourth Circuit Court of Appeals and Plaintiff's consent to the above-referenced FERC decision.

This Order constitutes a final judgment in this action.

**AND IT IS SO ORDERED.**

**[JUDGE'S SIGNATURE FOLLOWS]**

Case 3:22-cv-00491-MOC-DSCK Document 106 Filed 08/26/25 Page 25 of 25