# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### CIVIL ACTION NO. 5:25-cv-00159-KDB-DCK

| | |
|---|---|
| DUKE ENERGY CAROLINAS, LLC, *Plaintiff*, v. LAKE CRUISES, INC. and DEBORAH BOGGS HARWELL, *Defendants*. | **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** |

NOW COME DEFENDANTS Lake Cruises, Inc. ("Lake Cruises") and Deborah Boggs Harwell ("Ms. Harwell") (collectively, "Defendants"), by and through the undersigned counsel, and hereby submit their Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint.

## FACTS

This case arises from a dispute as to whether and how Defendant Lake Cruises may leave two boats parked within Lake Norman, a man-made reservoir which sits within multiple counties in North Carolina.

Lake Cruises is a company which, for approximately thirty years, offered dinner-cruise services upon Lake Norman for paying guests. At all relevant times, Ms. Harwell held a controlling interest in Lake Cruises. Lake Cruises owns and has operated two tour boats the primary purpose of which was to ferry guests upon the lake for dining and entertainment—the *Catawba Queen* and the *Lady of the Lake* (collectively, the "Boats"). Throughout the period in which Lake Cruises was running the aforementioned business, Lake Cruises moored the Boats upon property along the shoreline which was owned by an estate executed by Ms. Harwell. See

1

ECF 15, ¶ 20. On or around June 5, 2019, Plaintiff leased certain pertinent parts of the lakebed of Lake Norman to Defendants for purposes of allowing Lake Cruises to dock the Boats and operate its business. See ECF 15-4. The shoreline property and dock were together called "Queens Landing," see *id.*, p. 2, and this is where Lake Cruises had moored the Boats until approximately November 2022.

In or around December 2022, Defendants temporarily ceased Lake Cruises' operations and sold Queens Landing to a third party, which then leased dock-space back to Lake Cruises for purposes of mooring the Boats there. After Lake Cruises' lease at Queens Landing expired in or around February 2023, with no other choice, Defendants moved the Boats to an area between two islands within Lake Norman, and anchored them there, while Defendants set about finding a way to have the Boats either permissibly docked elsewhere along the shoreline or transported out of Lake Norman.

Throughout 2023 and 2024, Plaintiff and Defendants continually discussed the removal of the Boats from Lake Norman, or alternatively, finding a place to dock the Boats somewhere upon its shores. Because of the size of the Boats, removing them fully from Lake Norman, while possible, is a significantly expensive and challenging endeavor. In 2023, Defendants had hired a third-party professional to have the Boats removed from the lake, but throughout the challenging process of removing the Boats from Lake Norman, this professional became debilitatingly ill and could not effectuate the removal of the Boats from Lake Norman—an unfortunate and unforeseeable cause for the delay of the removal of the Boats. Similarly, the Chairman of the Lake Norman Marine Commission had agreed to assist with the relocation of the Boats, but became fatally ill and passed away, once again causing an unforeseeable delay to any resolution.

2

At all relevant times, Defendants have been willing to discuss compromises with Plaintiff, and Defendants maintain that they would be glad to dock the Boats at an approved location. However, Plaintiff has more recently insinuated that it has no interest in allowing the Boats to remain at Lake Norman, even at an appropriate dock, and regardless as to whether the Boats have caused or could potentially cause any problems for Duke's projects. Defendants have not received clarification from Plaintiff as to what exactly Plaintiff wants Defendants to do with the Boats, but Defendants remain willing to discuss potential resolutions with Plaintiff to all parties' satisfaction.

Defendants regularly have the Boats inspected, and have no intent nor reason to abandon their multimillion-dollar, locally famous and beloved Boats.

On October 2, 2025, Plaintiff filed their Complaint, apparently seeking a declaratory judgment "pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 et. seq." that Plaintiff has the right to control activities, structures, and the movement of vessels upon Lake Norman. ECF 1, ¶ 38; see also ECF 15, ¶ 39. On December 15, 2025, in response to Defendants' Motion to Dismiss, ECF 11, Plaintiff filed an Amended Complaint which largely matches the original Complaint except for certain added allegations which attempt to establish subject matter jurisdiction. See, e.g., ECF 15, ¶¶ 3, 12, 40.

Plaintiff further seeks damages and an injunction for Defendants' alleged trespass upon Lake Norman. ECF 15, pp. 14-17.

On January 20, 2026, Defendants filed a Motion to Dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to which this Memorandum of Law corresponds.

<u>**STANDARD OF REVIEW FOR SUBJECT MATTER JURISDICTION**</u>

A court must establish that it has subject matter jurisdiction, as a threshold matter, before assessing the merits of any case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (reaffirming that "[t]he requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception'"). A federal court "is obliged to dismiss a case whenever it appears the court lacks subject matter jurisdiction." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (citing Fed. R. Civ. P. 12(h)(3)). "It is elementary that the burden is on the party asserting jurisdiction to demonstrate that jurisdiction does, in fact, exist." *Id.* at 654 (citing *Thomson v. Gaskill*, 315 U.S. 442 (1942)).

<u>**ARGUMENT**</u>

I.    **Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction, as Plaintiff does not present a federal question.**

Plaintiff cursorily alleges that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff contends that this dispute arises under federal law. ECF 15, ¶ 3. By extension, Plaintiff asserts that this Court has supplemental jurisdiction over its state-law claims pursuant to 28 U.S.C. § 1367. *Id.*, ¶ 4.

In the absence of diversity jurisdiction, "[i]f [a] complaint presents no federal question, a federal court may not hear the suit." *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025).

"The mere assertion of a federal claim is not sufficient to obtain jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)." *Lovern*, 190 F.3d at 654 (4th Cir. 1999) (citing *Davis v. Pak*, 856 F.2d 648, 650 (4th Cir. 1988)). "Federal jurisdiction requires that a party assert a *substantial* federal claim." *Id.* (emphasis in original). "The … doctrine of substantiality is especially

4

important where a wholly frivolous federal claim serves as a pretext to allow a state-law issue, the real focus of the claim, to be litigated in the federal system." *Id.* at 655 (citing *Hagans v. Lavine*, 415 U.S. 528, 536 (1974)). "[F]ederal courts must guard against the litigant who frames a pretextual federal issue solely for the purpose of having a state-law claim adjudicated in the federal system; Article III of the Constitution forbids this practice. … Put simply, the Constitution does not contemplate the federal judiciary deciding issues of state law among non-diverse litigants." *Id.*; *see also Bell v. Hood*, 327 U.S. 678, 682–83 (1946) (holding that it is appropriate to dismiss a claim brought pursuant to a federal statute that "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction").

In the context of the federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. (the "DJA"), a plaintiff cannot confer subject matter jurisdiction upon a federal court unless the plaintiff brings a separate cause of action which arises under federal law—one other than the claim for declaratory judgment. *See, e.g.*, *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-672 (1950) (holding that the DJA cannot serve as an independent basis for conferring federal question jurisdiction); *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 16 (1983) ("*Skelly Oil* has come to stand for the proposition that 'if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking.'"); *Capitol Broad. Co., Inc. v. City of Raleigh, N. Carolina*, 104 F.4th 536, 540 (4th Cir. 2024) ("[T]o ensure that the Act is not used by district courts to wade into nonfederal waters, we must assure ourselves that subject matter jurisdiction would lie between the parties even in the absence of the [DJA]"); *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004) ("[I]t is elementary that a federal court may properly exercise jurisdiction in a declaratory judgment

5

proceeding when three essentials are met: … (2) the court [otherwise] possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction) ….”); *Interstate Petroleum Corp. v. Morgan*, 249 F.3d 215, 221, n. 7 (4th Cir. 2001) (“Of course, a claim under the [DJA], even if made, does not confer jurisdiction”); *Gibraltar, P.R., Inc. v. Otoki Grp., Inc.*, 104 F.3d 616, 619 (4th Cir. 1997) (holding that “the DJA does not provide a source of jurisdiction which is independent of substantive federal law”); *Steel Co.*, 523 U.S. at 107 (holding that “[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement.”).

If this rule—that the DJA does not provide for subject matter jurisdiction in federal court—were to be ignored, then “[f]or any case in which a state declaratory judgment action was available, litigants could get into federal court for a declaratory judgment … simply by pleading an adequate state claim for a declaration of federal law. *Franchise Tax Bd.*, 463 U.S. at 18.

Injunctive relief is not a standalone cause of action, but is instead a remedy which requires an underlying substantive claim which would entitle the plaintiff to such a remedy. *See Mowery v. Nat’l Geospatial-Intel. Agency*, 42 F.4th 428, 441 (4th Cir. 2022) (“Injunctions are not magic beans that may be handed out without any analysis of the underlying claims or a showing that such relief is warranted. Instead, courts grant injunctions, if at all, only *after* reviewing the factual basis and merits … of a claim) (emphasis in original).

Here, Plaintiff’s Amended Complaint purports to bring three causes of action. ECF 15. Plaintiff’s first claim is plainly one for a declaration under the DJA. ECF 15, pp. 9-12. Plaintiff’s second claim, for trespass upon private property, ECF 15, pp. 12-14, is unequivocally a state-law claim. Plaintiff’s third “claim” is one for an injunction, ECF 15, p. 14—that is, it is not a substantive cause of action at all, but instead merely a remedy sought which must rely upon

some independent claim for relief. Plaintiff's invocation of this Court's subject matter jurisdiction, then, must be predicated upon its first claim under the federal DJA. The DJA, however, cannot confer subject matter jurisdiction upon a federal court on its own, and Plaintiff is thus unable to carry its burden of showing that this Court has jurisdiction over any part of Plaintiff's suit.

Even if, for the sake of argument, the DJA *could* confer federal-question jurisdiction on its own—which the Fourth Circuit has clearly dictated it cannot—it is fairly obvious that the DJA claim in this matter is merely pretextual, far from a substantial component of this case, and would be entirely unnecessary as redundant to a plain old trespass lawsuit in state court.

Plaintiff's Amended Complaint should therefore be summarily dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, without prejudice as to Plaintiff's ability to refile their Complaint in state court, as this Court lacks subject matter jurisdiction over this case.

## II. Alternatively, Plaintiff's Amended Complaint should be dismissed for lack of subject matter jurisdiction, because its only federal claim is one for declaratory judgment and there is no actual controversy as to that claim.

Even assuming arguendo that this Court would have subject matter jurisdiction in this matter, Plaintiff's claim for declaratory judgment is invalid, as it is devoid of an actual controversy.

Regarding the threshold issue of a plaintiff's standing to bring such a claim, a federal district court is "without power to grant declaratory relief unless" an actual controversy exists. *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 272 (1941). In the context of the DJA, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Id.* at 273. "In essence,

7

for a district court to have jurisdiction to issue a declaratory judgment, … [f]irst, the dispute must be a 'case or controversy' within the confines of Article III of the United States Constitution …." *White v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 913 F.2d 165, 167 (4th Cir. 1990). "The test for a 'case or controversy,' … is whether the dispute 'is definite and concrete, touching the legal relations of parties having adverse legal interests.'" *Id.* (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937)).

"In the trial court, of course, a party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy." *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993).

Here, just as in all cases, Plaintiff bears the burden of proving the existence of an actual controversy. That is, Plaintiff must make clear to the Court, on the face of its Complaint, that there exists a "definite and concrete" *dispute*, "touching the legal relations of *parties* having adverse legal interests." *See White*, 913 F.2d at 167 (emphasis added).

Plaintiff has fallen way short of this requirement. Plaintiff makes no allegation as to any actions, words, or indications of any sort which disclose Defendants' actual position on any matter of legal pertinence. Instead, Plaintiff apparently seeks to have this Court clarify the terms of Plaintiff's alleged license with the federal government—a *non*-party to this suit—for the purposes of, it would seem, tentatively affirming some abstract powers which Plaintiff claims to hold pertaining to Lake Norman; a more academic exercise of judicial proclamation could hardly be sought than that which Plaintiff seeks here.

In reality, Plaintiff has attempted to kick open the doors of the federal courts, without valid warrant for doing so, by concocting an alleged controversy out of thin air so that it can present an issue for this Court to weigh upon under the DJA. Plaintiff boldly asserts that "[t]here

8

is an actual controversy between Defendants and Duke Energy regarding Duke Energy's authority to apply and enforce" certain responsibilities apparently granted to Plaintiff by the federal government. ECF 15, ¶ 40. But merely stating the existence of a matter does not make it so—Defendants have been, for years now, negotiating how best to effectuate Plaintiff's demands that the Boats be approvedly moored or relocated from Lake Norman, in obvious efforts to mitigate any disputes. It is unclear how such efforts have anything to do with the terms of Duke's federal licensure, when Defendants' cooperative actions plainly indicate a lack of a justiciable controversy as to any matter which is in any way federal.

In bringing a claim under the DJA, Plaintiff bore the burden of establishing, on the face of its Amended Complaint, that a genuine dispute exists such that this Court could weigh upon and hopefully resolve it. By failing to allege facts which would establish the existence of such a dispute, however, Plaintiff has failed to arm this Court with the necessary ammunition with which to offer a declaratory resolution. As a result, Plaintiff's claim under the federal DJA should be dismissed, and the remaining state-law claim for trespass should likewise be dismissed as it is without this Court's subject matter jurisdiction.

### III. Also in the alternative, the Court should decline to exercise its supplemental jurisdiction as to Plaintiff's state law claim.

A federal district court "shall have supplemental jurisdiction over" non-federal claims which are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, a district court "may decline to exercise supplemental jurisdiction" if "(2) the [state-law] claim substantially predominates over the claim or claims over which the district court has original jurisdiction, [or] (3) the district court has dismissed all claims over which it has original jurisdiction …." 28 U.S.C. § 1367(c).

While it is within the discretion of a federal court to retain jurisdiction over state-law claims even after all federal claims have been dismissed, the district court should consider whether there is "good reason to do so." *See Waybright v. Frederick Cnty., MD*, 528 F.3d 199, 209 (4th Cir. 2008); *see also Royal Canin*, 604 U.S. 22, 32 (2025) (declaring that where "federal law is not where the real action is … the district court … may (and indeed, ordinarily should) kick the case to state court").

Disputes as to property which sits wholly within a single state have long been respected as quintessentially state-law matters, reserved for resolution exclusively by state courts. *See, e.g.*, *Walker v. State Harbor Comm'rs*, 84 U.S. 648, 651 (1873) (warning that "infinite mischiefs would result if, in construing [state law] affecting titles to real property, where no Federal question is involved, a different rule were adopted by the Federal tribunals from that of the State courts"); *Shooting Point, L.L.C. v. Cumming*, 368 F.3d 379, 385 (4th Cir. 2004) (holding that "federal courts should be extremely reluctant to upset the delicate political balance at play in local land-use disputes"); *Gardner v. City of Baltimore Mayor & City Council*, 969 F.2d 63, 67 (4th Cir. 1992) ("Resolving the routine land-use disputes … is simply not the business of the federal courts. There is no sanction for casual federal intervention into what 'has always been an intensely local area of the law.'") (citations omitted).

The central claim in Plaintiff's Amended Complaint is one for trespass to real property. Even if, somehow, Plaintiff's declaratory judgment claim grants this Court subject matter jurisdiction as to any part of this suit, this Court should exercise its discretion and decline jurisdiction over Plaintiff's trespass claim for several reasons.

Firstly, as provided above, Plaintiff's sole "federal" claim pursuant to the DJA must be dismissed, as it is neither a valid legal basis for this Court's jurisdiction nor an adequately

pleaded claim which shows an actual controversy. Under *Royal Canin*, then, this Court should be reluctant to retain jurisdiction over Plaintiff's state law claim no matter *what* kind of claim it is.

Secondly, Plaintiff's DJA action appears to be a calculated effort to establish some dispute as to whether it owns or controls Lake Norman, presumably as a (necessary, in their minds) prerequisite to its claim for trespass upon Lake Norman. No matter how you slice it, the point of this case is that Plaintiff believes Defendants have trespassed upon Plaintiff's property. The state law claim thus substantially predominates over—indeed, it entirely swallows—Plaintiff's "federal" claim.

Lastly, the only real claim in this action is one for trespass to real property which sits wholly within the borders of the State of North Carolina. Such a claim, bearing solely upon the rights of its citizens as to land within its sovereignty, is quintessentially a matter for the courts of North Carolina to decide. State courts are the proper venue for adjudicating issues which are intensely local in nature; the federal courts' burdens are heavy enough to bear without taking on more. As such, this Court should decline to exercise subject matter jurisdiction—which Defendants do not believe it has anyway—and should dismiss Plaintiff's Amended Complaint entirely.

IV. **Plaintiff's Amended Complaint fails to plead sufficient factual allegations as to justify piercing the corporate veil, and it should therefore be dismissed entirely as to Ms. Harwell.**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Matherly v. Andrews*, 859 F.3d 264, 274 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Id.* (citations omitted).

"A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. … When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 664.

Federal law governs procedural issues, such as pleading standards and dismissal of a complaint pursuant to Rule 12(b)(6), even in a case predicated upon state law. *See, e.g.*, *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 74 (4th Cir. 2016). Even in federal court, however, "[t]he law of the state in which an entity is incorporated generally governs the question whether a court may pierce an entity's veil." *Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 386 (4th Cir. 2018). This is true even where the district court is exercising its jurisdiction over a case pursuant to a federal question. *See id.* at 383 (applying the rule to claims arising under 47 U.S.C. § 605(a)).

Lake Cruises is a North Carolina corporation. See ECF 15, ¶ 8. Pursuant to *Sky Cable*, then, North Carolina law governs whether Plaintiff has sufficiently pled facts in order to bring a claim against Ms. Harwell for conduct allegedly undertaken by Lake Cruises.

Under North Carolina law, "[t]he general rule is that in the ordinary course of business, a corporation is treated as distinct from its shareholders," and thus "[d]isregarding the corporate form is not to be done lightly." *Green v. Freeman*, 367 N.C. 136, 144–45, 749 S.E.2d 262, 270

(2013). *See also Troy Lumber Co. v. Hunt*, 251 N.C. 624, 627, 112 S.E.2d 132, 134 (1960) ("A corporation is an entity distinct from its shareholders, and the corporate entity is distinct, although all of its stock is owned by a single individual or corporation"); *S. Shores Realty Servs., Inc. v. Miller*, 251 N.C. App. 571, 583, 796 S.E.2d 340, 351 (2017) (holding that a "court's decision to pierce the corporate veil, thereby 'proceeding beyond the corporate form[,] is a strong step: Like lightning, it is rare [and] severe'") (citing *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 439, 666 S.E.2d 107, 112 (2008)).

"The doctrine of piercing the corporate veil is not a theory of liability," but is an extension of potential remedies based upon an otherwise successful claim. *Green*, 367 N.C. at 146, 749 S.E.2d at 271.

North Carolina has adopted the "instrumentality rule" in assessing whether a corporate veil can be pierced. *Glenn v. Wagner*, 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985). In *Glenn*, perhaps the seminal case on veil-piercing doctrine, this State's Supreme Court summarized the complex rule as follows:

> '[A party] which exercises actual control over [a corporation], operating the latter as a mere instrumentality or tool, is liable for the torts of the corporation thus controlled. In such instances, the separate identities of parent and subsidiary or affiliated corporations may be disregarded.' …
>
> This Court has enumerated three elements which support an attack on separate corporate entity under the instrumentality rule:
>
> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
>
> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and

13

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Id.* at 455, 329 S.E.2d at 330. Further, the burden is upon a plaintiff seeking to pierce a defendant's corporate veil to prove those aforementioned elements by offering evidence which shows that the defendant corporation displayed some combination of, at least, (1) inadequate capitalization; (2) non-compliance with corporate formalities; (3) complete domination and control of the corporation so that it has no independent identity; and/or (4) excessive fragmentation of a single enterprise into separate corporations. *Id.* at 455, 329 S.E.2d at 330-331.

"The aggrieved party must *show* that 'the corporation is so operated that it is a mere instrumentality or alter ego of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State.'" *Green*, 367 N.C. at 145, 749 S.E.2d at 270 (citations omitted, emphases altered). At the pleadings stage, the question is "whether Plaintiff's complaint alleged facts that would, if believed, tend to establish all three elements of the 'instrumentality rule.'" *Fischer Inv. Cap., Inc. v. Catawba Dev. Corp.*, 200 N.C. App. 644, 651, 689 S.E.2d 143, 148 (2009).

Here, Plaintiff has completely neglected to allege any actual facts to support the notion that Lake Cruises' corporate veil should be pierced. The entirety of allegations in Plaintiff's Amended Complaint as to their veil-piercing claim is as follows:

14. Defendant Harwell is the President of Defendant Lake Cruises, Inc.

15. Upon information and belief, Defendant Lake Cruises, Inc. was, and is, organized and operated as the alter ego of Defendant Harwell for Defendant Harwell's personal benefit and advantage.

16. Upon information and belief, at all relevant times, Defendant Harwell has exercised actual control over Defendant Lake Cruises, Inc., operating it as a mere instrumentality or tool, such that Defendant Lake Cruises, Inc. has no separate mind, will, or existence of its own.

14

17. Upon information and belief, at all relevant times, Defendant Harwell has exercised complete dominion and control over Defendant Lake Cruises, Inc.

18. Upon information and belief, at all relevant times, Defendant Lake Cruises, Inc. has, or has had, inadequate capitalization.

19. Upon information and belief, at all relevant times, Defendants have so intermingled their personal and financial affairs that Defendant Lake Cruises, Inc. was, and is, the alter ego of Defendant Harwell.

ECF 15, ¶¶ 14-19. In essence, Plaintiff provides nothing more than the most threadbare recital of the veil-piercing elements and factors imaginable. Not a single actual fact is offered to support any of Plaintiff's conclusions, other than that Ms. Harwell was the president of Lake Cruises—a fact which is categorically insufficient to establish the requisite "domination and control" for veil-piercing purposes. *See Lumber Co.*, 251 N.C. at 627, 112 S.E.2d at 134.

Further, all but one of the above rote recitations of the veil-piercing elements are made upon information and belief, in an unverified pleading, on behalf of a company with enormous numbers of employees. Plaintiff does not even allege that anyone involved with Plaintiff *knows* that any of their conclusory allegations are true, and Defendants have no idea who, on behalf of Plaintiffs, supposedly "upon information, believes" in the truth of their skeletal allegations as to Ms. Harwell's control of Lake Cruises.

Plaintiff thus provides no facts whatsoever with which to convince the court that it should take the extraordinary step of disregarding the Lake Cruises' corporate form. Because Plaintiff's allegations pertaining to their veil-piercing claim are extraordinarily conclusory and wholly unsupported by any factual allegations, said allegations are not entitled to an assumption of truth and should be disregarded.

As an extraordinary measure which allows a shareholder or owner to assume liability for the actions of its corporation, which is otherwise a distinct legal entity, the burden is upon

15

Plaintiff to show not only the feasability of its underlying claims, but each element required for piercing the veil of Lake Cruises.

Further, Plaintiff entirely fails to allege two out of the three elements of the veil-piercing test: that "[s]uch control [was] used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights" and that such "control and breach of duty proximately cause[d] the injury or unjust loss complained of." *See Wagner*, 313 N.C. at 455, 329 S.E.2d at 330. Plaintiffs make no mention of these elements at all. Nor do Plaintiffs even allege that veil-piercing is a remedy available for claims for declaratory judgment or for trespass—a proposition for which Defendants could find no authority nationwide.

In summary, because Plaintiff did not allege any facts which could support the extraordinary remedy of piercing the corporate veil of Lake Cruises, and because Plaintiff failed to allege two of the required elements for doing so, Plaintiff has not carried its burden of showing that Ms. Harwell could be held liable for the alleged conduct of Lake Cruises. And because Plaintiff does not allege any other basis for holding Ms. Harwell liable for the actions of a legal corporation, which is a distinct entity as a matter of law, Plaintiff fails to state a claim against Ms. Harwell upon which relief may be granted, and Plaintiff's Amended Complaint as against Ms. Harwell should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

THIS the 20th day of January, 2026.

Case 5:25-cv-00159-MEO-DCK   Document 22   Filed 01/20/26   Page 16 of 19

**TLG Law**

_____
Benjamin J. Axelman
(N.C. Bar #62239)
David G. Redding
(N.C. Bar #24476)
2907 Providence Rd. #303
Charlotte, NC 28211
baxelman@tlg-law.com
dredding@tlg-law.com
*Attorneys for Defendants*

17

# CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT complies with the Court's June 18, 2024 order related to the use of Artificial Intelligence. The undersigned hereby avers as follows:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexus, FastCase, and Bloomberg; and

2. Every statement and citation to an authority contained in this document has been checked by an attorney in this case and/or paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

THIS the 20th day of January, 2026.

**TLG Law**

_____
Benjamin J. Axelman
(N.C. Bar #62239)
David G. Redding
(N.C. Bar #24476)
2907 Providence Rd. #303
Charlotte, NC 28211
baxelman@tlg-law.com
dredding@tlg-law.com
*Attorneys for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I electronically filed the foregoing DEFENDANTS'

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED

COMPLAINT with the Clerk of Court using the Court's CM/ECF system, whereby a copy will

be served upon all counsel of record as follows:

> Joshua D. Spencer
> HAYNSWORTH SINKLER BOYD, P.A.
> ONE North Main Street, 2nd Floor (29601)
> P.O. Box 2048
> Greenville, South Carolina 29602-2048
> Phone: (864) 240-3200
> Fax: (864) 240-3300
> jspencer@hsblawfirm.com
>
> *Attorney for Plaintiff*

THIS the 20th day of January, 2026.

**TLG Law**

_____
Benjamin J. Axelman
(N.C. Bar #62239)
David G. Redding
(N.C. Bar #24476)
2907 Providence Rd. #303
Charlotte, NC 28211
baxelman@tlg-law.com
dredding@tlg-law.com
*Attorneys for Defendants*

19