**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION**

| | |
|---|---|
| DUKE ENERGY CAROLINAS, LLC,<br><br>PLAINTIFF,<br><br>v.<br><br>LAKE CRUISES, INC. AND DEBORAH BOGGS HARWELL,<br><br>DEFENDANTS. | C.A. No.: 5:25-CV-00159-MEO-DCK<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT IN LIEU OF ANSWER** |

Plaintiff, Duke Energy Carolinas, LLC ("Duke Energy" or "Plaintiff"), respectfully submits this Memorandum in Opposition to Defendants' Motion to Dismiss Amended Complaint in Lieu of Answer (ECF No. 21) and Defendants' Memorandum of Law in Support of Motion to Dismiss Amended Complaint (ECF. No. 22) (collectively, the "Motion" or "Defendants' Motion").[1]

---

[1] On November 25, 2025, Defendants filed an earlier Motion to Dismiss in Lieu of Answer (ECF No. 11) and Memorandum of Law in Support of Motion to Dismiss (ECF No. 12), in response to Duke Energy's original Complaint filed on October 2, 2025 ("Complaint"). Pursuant to Rule 15(a)(1)(B), Fed. R. Civ. P., and as set forth in greater detail in the Response to Defendants' Motion to Dismiss (ECF No. 16), Duke Energy filed an Amended Complaint on December 15, 2025 ("Amended Complaint"). The filing of Duke Energy's Amended Complaint rendered the original Complaint in this matter a nullity and no longer of any effect. See Fawzy v. Wauquiez Boats SNC, 873 F.3d 451, 455 (4th Cir. 2017) ("Because a properly filed amended complaint supersedes the original one and becomes the operative complaint in the case, it renders the original complaint 'of no effect.'") (quoting Young v. City of Mt. Ranier, 238 F.3d 567, 573 (4th Cir. 2001)); see also 6 Charles Alan Wright et al., Federal Practice and Procedure §1476 (3d ed.) ("A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies. . . . Once an amended pleading is interposed, the original pleading no longer performs any function in the case. . . ."). With the exception of adding the new Section IV to Defendants' Memorandum of Law in Support of Motion to Dismiss Amended Complaint, Defendants have largely not altered the allegations of this Motion from their original Memorandum to address the additional allegations in the Amended Complaint.

## INTRODUCTION

As plainly alleged on the face of the Amended Complaint, this case presents a quintessentially federal question arising under the Federal Power Act, § 791a, *et seq.* ("FPA"), and other applicable federal laws and regulations. These other applicable federal laws and regulations include two (2) Federal Energy Regulatory Commission ("FERC") Orders—pertaining to Duke Energy's application and interpretation of Duke Energy's FERC-approved Catawba-Wateree Shoreline Management Plan ("SMP"), and incorporated Catawba-Wateree Shoreline Management Guidelines ("SMG"), pursuant to Duke Energy's license from FERC to own and operate the Catawba-Wateree Hydroelectric Project ("Project").[2] The FPA authorizes FERC to issue licenses for hydropower projects, including the license issued to Duke Energy for the subject Project. 16 U.S.C. § 797(e); 16 U.S.C. § 803. The applicable FERC Order for the Project, in turn, provides that Duke Energy "must implement" the SMP approved by FERC and further "must take any lawful action necessary to correct [any] violation" including "requiring the removal of any non-complying structures and facilities." See **Exhibit 1** at p. 111.

The SMP, by virtue of the authority granted to Duke Energy, the FERC licensee, pursuant to the FPA, has the force and effect of a federal regulation. It is the FPA and its attendant regulations, including the SMP, which form the basis of Duke Energy's federal claims and require interpretation and declaration by this federal Court. **Defendants ignore this federal statutory and regulatory law entirely in their Motion, incorrectly claiming  that Duke Energy solely**

---

[2] A true and accurate copy of the November 25, 2015 FERC Order Issuing New License (153 FERC ¶ 62,134) to Duke Energy for the Project is attached hereto as **Exhibit 1**. A true and accurate copy of the May 17, 2017 FERC Order Modifying and Approving Updated Shoreline Management Plan (159 FERC ¶ 62,177) is attached hereto as **Exhibit 2**.

**bases its federal jurisdictional allegations on the Declaratory Judgment Act, 28 U.S.C. § et. seq. (the "DJA").** In so doing, Defendants completely ignore the actual federal jurisdictional allegations of the Amended Complaint. However, Defendants' improper characterization of the allegations in the Amended Complaint cannot invalidate the federal jurisdiction that is proper in this case and has been found to be proper in other federal cases involving similar requests for determination of the rights granted to and obligations required of a FERC licensee.[3]

Regardless of any arguments made by Defendants in the Motion, the fact remains that this is a case about Duke Energy's rights and obligations as the FERC licensee for the Project, pursuant to the FERC license requiring Duke Energy to enforce the SMP and any violations thereof. It is that SMP—and interpretation and application of it—that is the central issue in this case, and that issue is exclusively the province of a federal court.[4]

---

[3] It should also be noted that the Motion contains a "Facts" section, where Defendants have set forth alleged "facts"—without any citation to any evidentiary sources to substantiate them— that are not contained within the four corners of the Amended Complaint and should be disregarded when evaluating Defendants' Motion. See Evans v. U.S., 105 F.4th 606, 615 (4th Cir. 2024) ("Under a facial challenge, where the defendant contends that the allegations in the complaint are insufficient to confer subject-matter jurisdiction, the district court assesses the motion under the same standard as one brought under Rule 12(b)(6)" and "accepts all allegations as true and determines whether those allegations are sufficient to invoke jurisdiction."); Benton v. Layton, 628 F.Supp.3d 661, 663-64 (E.D. Va. 2022) (when evaluating a motion to dismiss for lack of jurisdiction, the "Court's analysis is both informed and constrained by the four corners of the Complaint and the documents incorporated therein"); McCreary v. Filters Fast LLC, No. 3:20-cv-595-FDW-DCK, 2021 WL 3044228, at *2 (W.D.N.C. July 19, 2021) (holding, where a facial challenge is asserted, that the Court must accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party).

[4] 16 U.S.C. § 825p ("The District Courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the *rules, regulations, and orders* thereunder . . . .") (emphasis added).

## STANDARD OF REVIEW

To survive a motion to dismiss, the underlying complaint "must contain sufficient facts to 'state a claim to relief that is plausible on its face.'" Corder v. Antero Res. Corp., 57 F.4th 384, 401 (4th Cir. 2023) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "When ruling on a Rule 12(b)(6) motion to dismiss, 'a judge must accept as true all of the factual allegations contained in the complaint.'" E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). Notice pleading is all that is required of a plaintiff to satisfy the pleading requirements of Rule 12. See Sylvia v. Wisler, 875 F.3d 1307, 1326 (10th Cir. 2017); U.S. ex rel. Hanna v. City of Chicago, 834 F.3d 775, 779 (7th Cir. 2016). A plaintiff must not tediously plead detailed factual allegations nor every necessary fact to support its claims. See Carrero-Ojeda v. Autoridad de Energia Electrica, 755 F.3d 711, 718 (1st Cir. 2014). In evaluating the sufficiency of a plaintiff's pleading, it is not the court's role to determine whether a party is likely to succeed on the merits of its claims, or to choose between competing allegations if both are plausible. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007); Doe v. Princeton Univ., 30 F.4th 335, 344 (3d Cir. 2022). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 556 U.S. at 663.

## ARGUMENT

**A.  Duke Energy's Amended Complaint presents a federal question and, thus, should not be dismissed for lack of subject matter jurisdiction.**

Despite the claims in Defendants' Motion, Duke Energy is not claiming that 28 U.S.C. § 1331 federal question jurisdiction is granted under the DJA.  Defendants' Motion conveniently omits that Duke Energy is seeking a declaratory judgment of rights and obligations arising under the FPA, and other applicable federal laws and regulations pertaining to Duke Energy's application and interpretation of the SMP and SMG, pursuant to Duke Energy's license from FERC to own and operate the Project.  The Motion **never mentions Duke Energy's jurisdictional basis of the Amended Complaint**, which was specifically pled in Paragraph 3 of the Amended Complaint.  Further, the Motion fails to cite or distinguish any of the many available cases interpreting the FPA to provide federal question jurisdiction over claims brought by a FERC licensee, like Duke Energy, pursuant to the FPA, its attendant regulations, and a FERC-approved shoreline management plan like the SMP.

The cases cited in Defendants' Motion supporting their claim that there is no federal question jurisdiction involve lawsuits brought solely under the DJA and are therefore irrelevant, because **the DJA is not—and has never been—the basis for federal question jurisdiction in this action**, as alleged throughout Plaintiff's Amended Complaint. Paragraphs 1 and 3 of the Amended Complaint allege the federal jurisdictional basis of this action, including Duke Energy's request for a declaratory judgment of rights and obligations arising under the FPA and its attendant regulations, including the FERC-mandated and FERC-approved SMP and SMG.  Paragraphs 10 through 12 of the Amended Complaint allege Duke Energy's authority as the FERC federal licensee with respect to the Project, including Duke Energy's responsibilities regarding the SMP

Case 5:25-cv-00159-MEO-DCK    Document 24    Filed 02/17/26    Page 5 of 24

and SMG.  Paragraph 27 of the Amended Complaint quotes the FERC license for the requirement that Duke Energy must implement the FERC-approved SMP and Paragraphs 28-32 of the Amended Complaint quote the specific sections of the FERC-approved SMP that Duke Energy alleges Defendants have violated.  The Affidavit of Michael A. Phillips that is attached as Exhibit F to Duke Energy's Amended Complaint explains Duke Energy's responsibilities pursuant to the FPA and the FERC license for the Project (Paragraph 18 of Affidavit); concludes that Duke Energy's determinations regarding Defendants' violations of the SMP and SMG are consistent with its enforcement of those documents, its responsibilities as a FERC licensee, and standards and practices applicable to FERC licensees (Paragraphs 21 and 22 of Affidavit); and determines that Duke Energy's actions have been reasonable and consistent with its enforcement of the SMP and SMG and consistent with industry standards and practices for a FERC licensee (Paragraph 24 of Affidavit).  Finally, U.S. District Court for the Western District of North Carolina Judge Robert J. Conrad, Jr.'s Order Granting Defendant's Motion to Alter or Amend and Motion for Summary Judgment that is attached as Exhibit G to Duke Energy's Amended Complaint sets forth the relationship between the FPA, FERC's license (for the same Project that is at issue here), and Duke Energy's FERC-mandated and FERC-approved SMP.  As Judge Conrad explained, "Duke Energy is federally mandated to implement and enforce the provisions of the [SMP] and [SMG]," based on the language in the same FERC order that Duke Energy relies upon in this case.  See Exhibit G to Amended Complaint at p. 13.

Defendants' Motion entirely ignores that federal courts have consistently held that a FERC licensee, like Duke Energy, can seek interpretation of their SMPs in federal court and that a dispute about the scope of a FERC licensee's powers under the FPA presents a federal question for subject

matter jurisdiction purposes. Generally, to establish a federal question, the issue is whether a state law claim (1) necessarily raises a stated federal issue, (2) is actually disputed, (3) is substantial, and (4) is a claim which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities. Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005). "Where all four of these requirements are met, . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." Gunn v. Minton, 568 U.S. 251, 258 (2013) (quoting Grable, 545 U.S. at 313-14).

Duke Energy's Amended Complaint necessarily raises a stated federal issue because its claims require the Court to interpret the FPA, the FERC license, and the FERC-approved SMP and SMG in order to determine the rights and obligations of the parties. See Sauk-Suiattle Indian Tribe v. City of Seattle, 56 F.4th 1179, 1186 (9th Cir. 2022) ("the United States's strong interest in national regulation of FERC-licensed projects, as evidenced by the FPA, supports that the issue of Seattle's obligations . . . is an important federal-law issue that properly belongs in federal court"); Sanders v. Duke Energy Carolinas, LLC, No. 3:20-CV-00215-KDB-DSC, 2022 WL 282567, at *5 (W.D.N.C. Jan. 31, 2022) (holding that the "FERC license sets the operative duties, obligations, and standard of care for FERC licensees" and thus "Duke's license to operate the [Project], along with incorporated federal law and regulations under the FPA and FERC, govern and set the standard for Duke's operations"); Funderburk v. S.C. Elec. & Gas Co., 179 F.Supp.3d 569, 579 (D.S.C. 2016) ("in any assessment of the merits of Plaintiffs' claim for negligence regarding the maintenance and operation of the Lake Murray Dam, the terms of SCE&G's FERC license, in

conjunction with the relevant laws, rules, and regulations provided by the FPA and the FERC, are federal issues necessarily raised in the claim"); Metro Hydroelectric Co. LLC v. Metro Parks, Serving Summit County, 443 F.Supp.2d 938, 941 (N.D. Ohio 2006) ("The Verified Complaint requires the Court to interpret the FPA, including the definition of 'project' under that Act," raising "important federal issues that will benefit from the advantages inherent in a federal forum.").

The claims in Duke Energy's Amended Complaint are actually disputed with these Defendants, as further discussed in the next section of this Memorandum, because Defendants dispute the application of FERC's rules and regulations, including the FERC-approved SMP and SMG, and disagree about the scope of Duke Energy's rights and obligations under federal law, including the FPA, the FERC license, and the FERC-approved SMP and SMG. Funderburk, 179 F.Supp.3d at 579 (holding federal issues actually disputed where "the parties vigorously dispute whether the FPA and the FERC's rules and regulations are applicable to Plaintiffs' negligence claim" and where "the parties dispute what duties are owed to Plaintiffs pursuant to statutory laws, rules, or regulations imposed on SCE&G").

The federal questions presented in Duke Energy's Amended Complaint are substantial because Duke Energy seeks to ensure that FERC orders under the Project, including the interpretation and application of the FERC-approved SMP and SMG, remain consistent and uniform. Funderburk, 179 F.Supp.3d at 580 ("'the federal issue in this case is substantial, in order to ensure that [the] FERC's Congressionally mandated purpose under the FPA is not diverted and the FERC orders under the project remain consistent and uniform'" (quoting Pressl v. Appalachian Power Co., 137 F.Supp.3d 900 (W.D. Va. 2015)); see also Sherr v. S.C. Elec. & Gas Co., 180 F.Supp.3d 407, 417-19 (D.S.C. 2016); VA Timberline, LLC v. Appalachian Power Co., No. Civ.A.

5:06-CV-00026, 2006 WL 1993557, at *2 (W.D. Va. 2006) ("The meaning of the FERC licenses is a substantial and 'important issue of federal law that sensibly belongs in a federal court.'" (quoting Grable, 545 U.S. at 315)). These questions are even more important because the Project, of which Lake Norman is only one part, reaches beyond North Carolina and into South Carolina, and thus the multistate nature of the Project and its SMP requires consistent, federal interpretation and application, instead of conflicting interpretation and application pursuant to the laws of multiple states. See Sanders, 2022 WL 282567, at *5 n.7.

Finally, a federal forum may entertain the claims in Duke Energy's Amended Complaint without disturbing any congressionally approved balance of federal and state judicial responsibilities because 16 U.S.C. § 825p expressly provides federal courts with exclusive jurisdiction over cases involving the FPA. See 16 U.S.C. § 825p ("The District Courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of [the FPA] or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, [the FPA] or any rule, regulation, or order thereunder."); Funderburk, 179 F.Supp.3d at 581.

The relief that Duke Energy seeks in its Amended Complaint is very similar to the relief sought and granted in other cases alleging violations of the FPA, FERC regulations, and FERC-approved shoreline management plans, which have been properly heard and decided in other United States District Courts. For example, in Appalachian Power Co. v. Arthur, the Court granted summary judgment to the plaintiff, a FERC licensee, who sought a declaration that the defendants violated the shoreline management plan by expanding pre-existing boat docks, constructing new

structures, and adding fill to their property, and ordered the defendants to remediate these violations. 39 F.Supp.3d 790, 797-98 (W.D. Va. Aug 11, 2014).

Further, in <u>Tri-Dam v. Frazier</u>, the Court denied the defendant's motion to dismiss for lack of subject matter jurisdiction a lawsuit alleging violations of "the FPA, FERC regulations, and the Shoreline Management Plan." No. 1:20-cv-00408-SKO, 2021 WL 3857649, at *1-2 (E.D. Ca. Aug. 30, 2021), *aff'd*, Nos. 22-15246, 22-15919, 2023 WL 3193592 (9th Cir. 2023). Using the <u>Grable</u> factors, the Court held that the state law claim "necessarily raises a federal question because the Court must interpret the Shoreline Management Plan, which is a part of Plaintiff's FERC license," that the "federal issue of Defendant's compliance with the Shoreline Management Plan" was actually disputed because the defendant denied that the facilities did not comply with the Shoreline Management Plan, that the federal issue was substantial because it impacted the plaintiff's duties under its license and FERC's obligations under the FPA, and that exercising jurisdiction would not disrupt the congressionally-approved, state-and-federal balance under the FPA. <u>Id.</u> at *6-7.

In <u>Appalachian Power Co. v. Nissen</u>, the plaintiff asked for a declaration that the defendants' unauthorized construction violated provisions of its FERC license and shoreline management plan. No. 7:14-cv-00535, 2015 WL 424811, at *1 (W.D. Va. Feb. 2, 2015), *vacated*, 671 Fed.Appx. 175 (4th Cir. 2016). The Court denied the defendants' motion to dismiss for lack of subject matter jurisdiction, holding a "straightforward reading" of 16 U.S.C. § 825p shows that "district courts have subject matter jurisdiction" over suits brought by a FERC licensee to enforce the licensee's "liabilities and duties under the FPA," including pursuant to the "license order that

incorporated the terms of the SMP," and thus this action fell "within the exclusive jurisdiction of the District Courts of the United States." Id. at *4.

Although the Nissen decision was later vacated and remanded by the Fourth Circuit Court of Appeals, relying on Pressl v. Appalachian Power Co., 842 F.3d 299 (4th Cir. 2016), that same result should not occur here because Pressl only determined the unavailability of federal question jurisdiction for interpretation of a flowage easement under state law, not for interpretation of an SMP under federal law. When the Fourth Circuit Court of Appeals reviewed the Nissen decision, which involved an SMP, but primarily sought interpretation of a flowage easement, it again concluded, based on the precedent of Pressl, that a district court does not have subject matter jurisdiction over an action seeking interpretation of a flowage easement, which "does not necessarily raise any federal question." Appalachian Power Co. v. Nissen, 671 Fed.Appx. 175 (4th Cir. 2016). However, Pressl involved a removed action that did not even try to state a federal cause of action or ask for a declaration of rights under a shoreline management plan and only sought interpretation of a flowage easement under state law. See also Jones v. Duke Energy Carolinas, LLC, No. 3:20-cv-00451-FDW-DSC, 2020 WL 6528864, at *4 (W.D.N.C. Nov. 5, 2020) (holding, in removed case involving federal law counterclaim where plaintiffs tangentially referenced federal law in their Complaint, such counterclaim and tangential reference were insufficient to necessarily raise a federal issue). Likewise, Jones is distinguished here because this is not a removed action where the plaintiff only asserted a state law cause of action, but one brought by Duke Energy specifically seeking a declaration of rights under the FPA, the FERC license, and the SMP that the Unauthorized Vessels violate the SMP and must be removed pursuant to Duke Energy's rights as the FERC licensee.

The more instructive Fourth Circuit case is the earlier decision of <u>VA Timberline, L.L.C. v. Appalachian Power Co.</u>, in which the Fourth Circuit Court of Appeals affirmed the district court's order granting summary judgment in favor of the defendants on the basis that the FERC licensee, who was responsible for regulating project lands pursuant to its FERC-approved shoreline management plan, "maintained sufficient property rights over the project lands" in the "easement granted in the deed" to the plaintiff that noted the release "was subject to the terms and conditions of its FERC license." 343 Fed.Appx. 916-918 (4th Cir. 2009). The <u>VA Timberline</u> court noted that it did not need to "reach the question of whether a flowage easement alone is a sufficient property interest to regulate the land." <u>Id.</u> at 918. In <u>Pressl</u>, the court referenced but did not invalidate the <u>VA Timberline</u> opinion, discussing that the court rejects the contention "that interpretation of an easement necessarily depends on a question of federal law" but distinguishing that the conveyances at issue in <u>VA Timberline</u> were explicitly made subject to the FERC license, and thus "interpreting the license was necessary to resolve the case," as opposed to simply interpreting a flowage easement. <u>Pressl</u>, 842 F.3d at 304 n.2.

Likewise, in this action, Duke Energy does not seek interpretation of a flowage easement and, indeed, no flowage easement is alleged in the Amended Complaint because the Unauthorized Vessels are currently anchored on lakebed that Duke Energy owns in fee simple. As in <u>VA Timberline</u>, Duke Energy seeks interpretation of its FERC license and the FERC-mandated and FERC-approved SMP, including Duke Energy's rights to interpret and apply the SMP within the federally regulated Project Boundary of a federally licensed, interstate FERC project. More specifically, Duke Energy seeks a declaration that, pursuant to the FPA, its FERC license, and the SMP, Duke Energy has the right to require removal of Defendants' Unauthorized Vessels from

the Project.  By virtue of the Motion, Defendants seek to force Duke Energy to rely solely upon state law claims for trespass to seek removal of the vessels and seek to deprive Duke Energy of a federal forum to vindicate its federal rights as a FERC licensee.  Defendants' position is entirely inconsistent with Duke Energy's status as the FERC licensee for the Project, and no defendant should be able to strip a FERC licensee's rights pursuant to federal law—and its right to a federal forum to determine those rights—simply because the defendant alleges some state law cause of action in state court might possibly accomplish the same purpose.  While Duke Energy has also alleged a state law cause of action for trespass pursuant to the Court's supplemental jurisdiction, that cause of action is legally secondary to Duke Energy's rights as a FERC licensee under federal law pursuant to the Supremacy Clause.  Indeed, this is why Duke Energy alleges its federal causes of action first in the Amended Complaint and why the state law trespass cause of action is alleged in a secondary way under the Court's supplemental jurisdiction and can essentially be viewed as pleading in the alternative.

This foundation of relevant case law interpreting the FPA, which Defendants entirely ignore in their Motion, conclusively establishes that this case does not present a simple state law question of easement interpretation, trespass, or otherwise, but instead implicates the federal system as a whole because it involves the ability of a FERC licensee to interpret and apply its FERC-mandated and FERC-approved SMP and SMG in controlling the activities that take place within the Project Boundary (as that term is defined in FN 3 of the Amended Complaint) of an interstate FERC project.  See 28 U.S.C.  § 2201(a) ("any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought").  The declaratory

Case 5:25-cv-00159-MEO-DCK    Document 24    Filed 02/17/26    Page 13 of 24

judgment that Duke Energy seeks in its Amended Complaint will be specific to these Defendants and their two (2) unauthorized, abandoned vessels—the "Lady of the Lake" and the "Catawba Queen" (the "Unauthorized Vessels"), but it is based in federal law, including as alleged in Paragraphs 3, 10, 12, and 39 of the Amended Complaint. Duke Energy specifically asks for a declaratory judgment regarding Duke Energy's authority to interpret and apply, as well as Duke Energy's interpretation and application of, the SMP and the SMG, as set forth in detail in the Amended Complaint. Duke Energy requests an affirmation of its authority to interpret and apply the SMP and SMG and a specific declaration of Duke Energy's rights with respect to Defendants' Unauthorized Vessels within the Project Boundary. Duke Energy further requests a declaration that the Unauthorized Vessels violate the FERC-mandated and FERC-approved SMP and requests an order that the Unauthorized Vessels must be removed from the FERC-licensed Project, which consists of multiple reservoirs in more than one state, because they violate the SMP. Despite what Defendants may allege, none of Duke Energy's requests are based upon state law, nor is state trespass law sufficient to address these quintessentially federal rights and concerns.

**B.      There is a genuine controversy as to Duke Energy's claims because Defendants have engaged in a definite and concrete dispute as to Duke Energy's legal rights and obligations in this adversarial proceeding.**

A genuine controversy exists where there is a "dispute between parties who face each other in an adversary proceeding" and who have "taken adverse positions with respect to their existing obligations," where the dispute "relates to legal rights and obligations," and where the dispute is "definite and concrete, not hypothetical or abstract." Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 242 (1937). While Defendants claim in their Motion that they are not disputing Duke Energy's federal licensure, there is absolutely a genuine controversy as to federal

law, including the FPA, through the FERC-mandated and FERC-approved SMP because Defendants admit that this case is about "whether and how Defendant Lake Cruises may leave two boats parked within Lake Norman" (ECF No. 22 at p. 1), and Duke Energy's Amended Complaint specifically addresses why the Unauthorized Vessels may not be left in their current position on Lake Norman in violation of the SMP. The determination of this dispute, specifically the determination of whether the existence of the Unauthorized Vessels in their current location violates the SMP, necessarily involves more than just a state law trespass claim; it involves the interpretation of the federally approved SMP and Duke Energy's authority pursuant to it. Duke Energy is seeking the removal of the Unauthorized Vessels from Lake Norman based upon specific provisions of the SMP, which need to be interpreted and given effect by a federal court, not just evaluated under state law theories of trespass. These specific provisions of the SMP[5] for which Duke Energy seeks interpretation by this federal court are as follows:

- The Project Boundary is "the area within the Normal Full Pond Elevation of the Project reservoirs and the lands immediately surrounding the dams, powerhouses, and Project Recreation Sites." *SMP*, at 2. The Normal Full Pond Elevation of Lake Norman Reservoir is 760.0 feet (AMSL). Id.

- "All moored watercraft must be within the confines of the lease area." *SMP*, at C-14.

- "Lake Uses That Are Not Authorized" include the "[a]bandonment of personal property including, but not limited to, vehicles, watercraft, boat trailers, lake use facilities, and building materials[.]" *SMP*, at C-71.

- "Lake Uses That Are Not Authorized" include "[a]ny other use that is determined to be unacceptable by Duke Energy, in its sole discretion." *SMP*, at C-71.

---

[5] The Catawba-Wateree Shoreline Management Plan may be accessed at https://www.duke-energy.com/community/lakes/services/cw-shoreline-management-plan.

- "Abandoned watercraft must be removed from within the Project Boundary." *SMP, Appendix E – Process for Structure Renovation and Removal*, E-3.

With respect to these provisions of the SMP,

- Duke Energy requires a federal court to interpret the provision defining the Project Boundary because Duke Energy contends that the Unauthorized Vessels, where they are currently anchored on lakebed that Duke Energy owns in fee simple (as shown in Exhibit E to the Amended Complaint), are within the Project Boundary and thus subject to Duke Energy's regulation pursuant to the SMP.

- Duke Energy needs a federal court to interpret the provision of the SMP regarding mooring vessels within a lease area because the Unauthorized Vessels once were moored within a lease area, but that is no longer the case, and Duke Energy seeks to have the court interpret that provision of the SMP as meaning that the Unauthorized Vessels are no longer allowed to be moored within the Project Boundary because they are no longer moored within an approved lease area.

- Duke Energy further needs a federal court to interpret the provisions of the SMP relating to "Lake Uses That Are Not Authorized," including the provision broadly defining unauthorized uses as any use that is determined to be unacceptable by Duke Energy, in its sole discretion, and the provisions relating to abandoned watercraft to determine whether Duke Energy can rely upon either or both of those provisions in order to require Defendants to remove the Unauthorized Vessels from Lake Norman.

- Finally, Duke Energy needs a federal court to determine whether, pursuant to the terms of the SMP, the Unauthorized Vessels have, in fact, been abandoned, particularly as Defendants deny that they have been abandoned.

There is an actual and genuine controversy as to Duke Energy's claims because the Unauthorized Vessels remain on Lake Norman within the Project Boundary, in violation of the SMP and SMG, and Defendants have failed and refused—despite repeated demands—to remove them, as alleged in Paragraphs 35 and 37 of the Amended Complaint. See United Nat. Ins. Co. v. Horton Sales Dev. Corp., No. 1:11cv28, 2011 WL 4714337, at *3 (W.D.N.C. Sep. 15, 2011) (finding case or controversy present in declaratory judgment action where demand letters were sent to defendants and rejected by defendants); see also Bitter v. Windsor Sec., LLC, No. 13-cv-05022-WHO, 2014 WL 1411219, at *3-6 (N.D. Cal. Apr. 11, 2014) (denying defendant's motion to dismiss declaratory judgment action on the basis that demand letter presented case or controversy); Boydstun Equip. Mfg., LLC v. Cottrell, Inc., No. 3:16-cv-790-SI, 2016 WL 7378990, at * (D. Or. Dec. 20, 2016) (denying defendant's motion to dismiss declaratory judgment action on the basis that defendant rejected multiple "strongly worded demand letters," presenting a case or controversy). If Defendants had simply removed the Unauthorized Vessels as requested, Duke Energy would not have brought this action seeking to have the Unauthorized Vessels removed. It is incredulous that Defendants claim that there is no case or controversy when they admit that Duke Energy has demanded removal of the Unauthorized Vessels and further admit that Defendants have failed and refused to remove them. Indeed, there could not be a better example of a case or controversy.

Unlike what the Motion claims, Duke Energy is not seeking to have the Court declare the parties' rights and obligations under the SMP with respect to the entire federal government, but rather with respect to *these Defendants and these Unauthorized Vessels*, and Duke Energy seeks an order of this Court declaring that the SMP allows Duke Energy to require removal of *these*

*Unauthorized Vessels by these Defendants.* Defendants' Motion, itself, makes clear that there is an actual controversy about these issues because Defendants, engaging in this adversarial proceeding, admit that Duke Energy has requested the removal of the Unauthorized Vessels while also admitting that they have not removed them and have no definitive plan to do so. There is a definite and concrete dispute as to the rights and obligations of Duke Energy because Defendants have failed to comply with Duke Energy's demands for removal pursuant to the SMP. Thus, the Amended Complaint, including the cause of action for a declaratory judgment under the FPA and its attendant regulations, makes clear that there is a live case or controversy by virtue of the continued presence of the Unauthorized Vessels despite repeated demands for their removal.

**C.     This Court may exercise supplemental jurisdiction as to Duke Energy's state law claim for trespass because it is part of the same case or controversy as Duke Energy's federal claims.**

Duke Energy's Amended Complaint does not present a routine land use dispute, as Defendants claim, requiring evaluation solely as a trespass under state law. Rather, this case involves the presence of Unauthorized Vessels within the Project Boundary of a FERC-licensed reservoir that is part of an intensely regulated interstate FERC Project and directly implicates the ability of Duke Energy to require removal of the Unauthorized Vessels pursuant to the SMP, invoking Duke Energy's status as the FERC licensee and the exercise of its rights and responsibilities pursuant to federal law as that FERC licensee.

In <u>Sauk-Suiattle Indian Tribe v. City of Seattle</u>, a case involving regulation of a FERC-licensed project, the Ninth Circuit Court of Appeals held that the district court "properly exercised supplemental jurisdiction over the remaining state-law claims because they 'are so related to claims in the action within such original jurisdiction that they form part of the same case or

controversy,'" including because all of the claims "rest on the same underlying facts." 56 F.4th at 1186 (quoting 28 U.S.C. § 1367(a). This Court should likewise exercise supplemental jurisdiction over Duke Energy's state law trespass claim, which, while secondary to Duke Energy's federal claims in this case, rests on the same underlying facts as the other claims in the Amended Complaint.

This case is not just a state law trespass case but implicates the federal system as a whole because it involves the ability of a FERC licensee to control what takes place within the Project Boundary of the reservoir it operates, including the ability and right of the FERC licensee to exclude the Unauthorized Vessels from that reservoir under its FERC license and the FERC-mandated and FERC-approved SMP. Duke Energy's case presents a fundamental question about the operation and maintenance of a federally regulated and licensed reservoir and thus a federal court, and only a federal court, must determine Duke Energy's rights and the extent of those rights.

**D.** **Under the applicable federal pleading standard, the Amended Complaint pleads sufficient factual allegations to justify piercing the corporate veil as to Defendant Deborah Boggs Harwell ("Ms. Harwell"), and Duke Energy should be allowed to conduct discovery on its factual allegations.**

Duke Energy does not dispute the law that Defendants cite in Section IV[6] of their Motion providing that "[t]he law of the state in which an entity is incorporated generally governs the

---

[6] Section IV of Defendants' Motion discusses the allegations in Duke Energy's Amended Complaint regarding piercing the corporate veil. For this Court's information, Duke Energy did not alter these allegations from the filing of the original Complaint to the filing of the Amended Complaint. The reason for this choice is that Defendants' earlier Motion to Dismiss in Lieu of Answer (ECF No. 11) and Memorandum of Law in Support of Motion to Dismiss (ECF No. 12), in response to Duke Energy's original Complaint, did not include any argument that the allegations in the original Complaint regarding piercing the corporate veil were inadequate. Therefore, observing that Defendants did not previously object to the pleading of Duke Energy's piercing the corporate veil allegations under the federal pleading standard or North Carolina state substantive

question whether a court may pierce an entity's veil." Sky Cable, LLC v. DIRECTV, Inc., 886 F.3d 375, 386 (4th Cir. 2018).  However, Defendants conflate the separate applications of federal procedural law regarding pleading issues and state substantive law regarding the elements required to pierce the corporate veil by alleging that "North Carolina law governs whether Plaintiff has *sufficiently pled* facts in order to bring a claim against Ms. Harwell for conduct allegedly undertaken by Lake Cruises" and by citing multiple North Carolina state court cases for what must be alleged at the pleading stage to succeed on a piercing the corporate veil claim.  (ECF No. 22 at pp. 11-16) (emphasis added).  These allegations blur the distinction between substantive law (the elements of piercing the corporate veil that are governed by North Carolina state law) and procedural pleading requirements (which are governed by the Federal Rules of Civil Procedure). See Berk v. Choy, No. 24-440, 2026 WL 135974, at *3 (U.S. Jan. 20, 2026) ("a valid Rule of Civil Procedure displaces contrary state law even if the state law would qualify as substantive under Erie's test").

While North Carolina state law governs the substantive elements of piercing the corporate veil, federal procedural law governs the specificity with which facts must be alleged in a complaint filed in federal court.  Under federal procedural law, this Court is only required to assess whether the Amended Complaint "plausibly alleges sufficient facts that would, if believed, tend to establish the required elements to pierce the corporate veil under North Carolina's 'instrumentality rule.'" Johnson v. Cricket Council USA, Inc., 658 F.Supp.3d 276, 284 (E.D.N.C. 2023) (citations omitted); see also Landress v. Tier One Solar LLC, 243 F.Supp.3d 633, 649-50 (M.D.N.C. 2017)

---

law, Duke Energy did not believe that any amendments to these allegations were necessary before filing its Amended Complaint.

(denying motion to dismiss to the extent based on theory of piercing the corporate veil where Plaintiff's allegations were plausible enough to raise a right to relief as to this claim above the speculative level). Further, "[s]ince a piercing of the corporate veil claim depends on facts that Plaintiffs must obtain through discovery," Defendants' Motion is premature and must be denied. Rezapour v. Earthlog Equity Grp., Inc., No. 5:12CV105-RLV, 2013 WL 3326026, at *9 (W.D.N.C. July 1, 2013) (denying motion to dismiss); see also Crown Equipment Corp. v. Brady, No. 5:23-CV-059-KDB-DCK, 2024 WL 1481068, at *10 (W.D.N.C. Feb. 23, 2024) (denying motion to dismiss claim of piercing the corporate veil on the basis that "dismissal would be premature" as "it appears that further development of the record will assist a determination on the merits, or in the alternative, a settlement"); Doby-Johnson v. Nash, 2014 WL 1278515, at *4 (D.S.C. Mar. 27, 2014) ("in making the decision as to whether a corporate veil should be pierced, the Court must engage in an intensely factual inquiry as to corporate form, governance, domination, control and finances" and thus the decision to pierce the corporate veil depends largely on the resolution of questions of fact and is "inappropriate to determine on a motion to dismiss").

By relying so heavily on North Carolina state substantive law in their Motion, Defendants improperly turn their Motion, which is one to dismiss, into one for summary judgment. At a minimum, Duke Energy requests that the arguments contained in Section IV of the Motion should be denied until Duke Energy conducts sufficient discovery for a jury to decide if the corporate form should be disregarded in this case. In the alternative, if this Court finds the current allegations in the Amended Complaint do not plausibly allege sufficient facts that would, if believed, tend to establish the required elements to pierce the corporate veil under North Carolina's "instrumentality rule," then Duke Energy asks that this Court allow Duke Energy to amend its Amended Complaint

to address in a more detailed manner the elements set forth in <u>Glenn v. Wagner</u>, 313 N.C. 450, 454-55, 329 S.E.2d 326, 330-31 (1985). However, Duke Energy believes that its current Amended Complaint is sufficiently pled under applicable federal pleading requirements, and that this portion of the Motion should be denied.

<b><u>CONCLUSION</u></b>

For the reasons set forth above, Duke Energy respectfully requests that Defendants' Motion to Dismiss Amended Complaint in Lieu of Answer be denied. In the alternative, with respect to the arguments contained in Section IV of Defendants' Motion to Dismiss Amended Complaint in Lieu of Answer, only, Duke Energy respectfully requests that this Court allow Duke Energy to amend its pleading to address in a more detailed manner the elements set forth in <u>Glenn v. Wagner</u>, 313 N.C. 450, 454-55, 329 S.E.2d 326, 330-31 (1985).

Respectfully submitted,

**HAYNSWORTH SINKLER BOYD, P.A.**

/s/ Joshua D. Spencer
Joshua D. Spencer (N.C. Bar No. 50216)
jspencer@hsblawfirm.com
ONE North Main Street, 2nd Floor (29601)
P.O. Box 2048
Greenville, South Carolina 29602-2048
Phone: (864) 240-3200
Fax: (864) 240-3300

February 17, 2026
Greenville, South Carolina

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies that Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss Amended Complaint in Lieu of Answer complies with the Court's June 18, 2024 order related to the use of Artificial Intelligence. The undersigned hereby avers as follows:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexus, FastCase, and Bloomberg; and

2. Every statement and citation to an authority contained in this document has been checked by an attorney in this case and/or paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

By: /s/ Joshua D. Spencer
*Attorney for Plaintiff*

February 17, 2026
Greenville, South Carolina

**CERTIFICATE OF SERVICE**

I certify that on the 17th day of February 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the parties who have filed an appearance in this lawsuit by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/ Joshua D. Spencer
*Attorney for Plaintiff*

February 17, 2026
Greenville, South Carolina