# Exhibit 2

**May 17, 2017 FERC Order Modifying and Approving Updated Shoreline Management Plan (159 FERC ¶ 62,177)**

159 FERC ¶ 62,177
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Duke Energy Carolinas LLC                    Project No.  2232-650

ORDER MODIFYING AND APPROVING UPDATED
SHORELINE MANAGEMENT PLAN

(Issued May 17, 2017)

1.      On October 4 and November 4, 2016,[1] as supplemented on March 2, 2017,[2] Duke Energy Carolinas LLC (Duke Energy or licensee), licensee for the Catawba-Wateree Hydroelectric Project No. 2232, filed an updated shoreline management plan (SMP), pursuant to Article 409 of the project license.[3]  The project is located on the Catawba and Wateree Rivers in nine counties in North Carolina (Burke, Alexander, McDowell, Iredell, Caldwell, Lincoln, Catawba, Gaston, and Mecklenburg counties), and five counties in South Carolina (York, Chester, Lancaster, Fairfield, and Kershaw counties).

**Project Description**

2.      The Commission issued the original project license on September 17, 1958 and a new license for the project on November 25, 2015.  The 843.102-megawatt project is located on the Catawba River, which begins in western North Carolina and flows easterly, then southerly, into South Carolina where it joins Big Wateree Creek to form the Wateree River.  The project consists of 13 hydroelectric developments with 11 reservoirs having about 1,727 miles of shoreline spread over a 200-mile reach of river.  The 11 reservoirs, in order from north to south, are:

| North Carolina | South Carolina |
|---|---|
| 1. Lake James | 7. Lake Wylie |
| 2. Lake Rhodhiss | 8. Fishing Creek Lake |
| 3. Lake Hickory | 9. Great Falls Lake |

---

[1] The October 4 and November 4, 2016 filings are both dated October 3, 2016.

[2] The supplemental filing consists of a revised Table 2 (shoreline classifications) to replace the table in the earlier filings.  The revised table corrects specific errors found in the original table.

[3] Order Issuing New License (153 FERC ¶ 62,134) issued November 25, 2015.

    4.  Lookout Shoals Lake        10. Rocky Creek Lake
    5.  Lake Norman             11. Lake Wateree
    6.  Mountain Island Lake

3.     Duke Energy currently operates the project developments in accordance with reservoir guide curves and, at most of the developments, maintains minimum flow releases to protect aquatic resources downstream from the development(s).  The existing project boundary includes the area within the full pool elevation of each of the project reservoirs and the lands immediately surrounding the dams and powerhouses.  The project boundary also extends upland from the full pool elevation to encompass project recreation sites.

## Background

4.     During the project's relicensing proceeding, Duke Energy proposed to modify the project's 2003 SMP, approved under the previous license, with revised shoreline classification maps and shoreline management guidelines (SMG), and to review and update the SMP every 10 years following license issuance.[4]  Commission staff found Duke Energy's approach reasonable and also noted that since 2003, the Commission approved a number of amendments to the 2003 SMP and reclassifications of project shorelines.[5]  As a result, the Commission included Article 409 in the November 25, 2015 license.

5.     Article 409 requires the licensee to implement the 2003 SMP, as amended under the prior license; and within 6 months of license issuance, file with the Commission for approval, an updated SMP with the following modifications:

    (1)   A provision for addressing any licensee-requested authority to make changes to the SMP, Shoreline Classification Maps (classification maps), or SMG without prior Commission approval, along with an explanation of the type, nature, and scope of the licensee's authority to make such changes;

    (2)   A provision for addressing how and when shoreline reclassification requests, including identified mapping errors, will be filed with the Commission for approval; and

---

[4] Order Modifying and Approving Revised Shoreline Management Plan (105 FERC ¶ 62,027), issued October 15, 2003.

[5] *See* 111 FERC ¶ 62,252 (2005); 116 FERC ¶ 62,008 (2006); 118 FERC ¶ 62,072 (2007); 123 FERC ¶ 62,040 (2008); 126 FERC ¶ 62,121 (2009); 136 FERC ¶ 62,069 (2011); 150 FERC ¶ 62,179 (2015); and 150 FERC ¶ 62,046 (2015).

Document Accession #: 20170517-3026     Filed Date: 05/17/2017

(3)   A provision that every 10 years, the licensee must file a report, for Commission approval, describing whether or not revisions to the SMP, including the Shoreline Classification Maps and SMG, are needed.  The report must include an evaluation of the adequacy of the SMP and whether or not changes are warranted.  If revisions are needed, the licensee may choose to either (a) provide a plan and schedule for filing the revision, or (b) file the revised SMP with the report.  The licensee must file with the Commission for approval, the report and, if provided with the report, a revised SMP.  The report/revised SMP must be developed after consultation with, at a minimum, the U.S. Fish and Wildlife Service (USFWS), North Carolina Department of Environment and Natural Resources,[6] North Carolina Wildlife Resources Commission, South Carolina Department of Parks, Recreation, and Tourism, and South Carolina Department of Natural Resources.

6.      The updated SMP must also include revised classification maps that incorporate the proposed classification maps filed as part of Book 5, Volume 5 of the license application and their associated classifications and lake use restrictions proposed in Appendix J of the of the Comprehensive Relicensing Agreement filed on December 29, 2006.  The revised maps must include and identify Commission-approved or required modifications and any other changes made to protect newly discovered resources such as archaeological or historic sites, threatened or endangered species, special concern species, or to correct any mapping errors since the SMP was approved in 2003.  The filing must also include a detailed description of how the updated maps were developed and their accuracy level.

7.      The licensee must also update the SMG to incorporate the proposed guidelines in Appendix J of the Comprehensive Relicensing Agreement filed on December 29, 2006, as well as include and identify any additional Commission required modifications since the SMP was approved in 2003.

8.      Finally, Article 409 requires the licensee to file two separate sets of Geographic Information System (GIS) data for the proposed shoreline classifications in a georeferenced electronic file format (such as ArcView shape files, GeoMedia files, MapInfo files, or a similar GIS format).

**Updated Shoreline Management Plan**

9.      The primary goal of the proposed SMP is to provide for public and private access to project lands and waters while managing the project's natural and cultural resources and providing for electricity production and, at the same time, ensuring compliance with

---

[6] Recently renamed the North Carolina Department of Environmental Quality.

Document Accession #: 20170517-3026     Filed Date: 05/17/2017

articles 409 and 411 in a manner consistent with other license requirements.[7]  To meet this goal, the licensee developed the updated SMP using appropriate resource data, making improvements based on its experience implementing the approved SMP under the previous license, coordinating with other project resource plans, updating its 2006 shoreline classification maps as appropriate, and consulting with appropriate resource agencies to protect key habitat areas and cultural resources.

10.     The proposed SMP, including specific appendices,[8] consists of a project area description, a history of shoreline management at the project, a description of shoreline classifications and SMG, a structure renovation and removal program, procedures for challenging SMP mapping accuracy, a public outreach and education program, and an SMP review and update process.  Finally, the proposed SMP includes the additional provisions required under Article 409, as well as documentation of consultation with the required entities and other stakeholders on the revised plan.

11.     The licensee developed its proposed shoreline classifications based upon inventories of wildlife, fish spawning and rearing, cultural resources, as well as its consideration of current shoreline uses and characteristics, current lake use restrictions, and potential future lake use requests.  The proposed shoreline classifications include: (1) environmental; (2) bottomland hardwood area; (3) natural (with sub-classification of natural isolated berm); (4) impact minimization zone (IMZ);[9] (5) commercial marina; (6) residential marina; (7) residential; (8) business/industrial; (9) project operations; (10) public recreation;[10] and (11) public infrastructure.  In addition, the licensee developed

---

[7] Article 411 allows the licensee to grant permission, without prior Commission approval, for the use and occupancy of project lands for such minor activities as small residential boat docks, shoreline stabilization, and landscape plantings.  Such uses must be consistent with the purposes of protecting and enhancing the scenic, recreational, and environmental values of the project.

[8] These appendices include, but are not limited to, classification maps, shoreline classification and lake use restrictions, SMG, true public marina (i.e., a marina operating as a business that also provides for public use of the facilities) requirements, and a shoreline stabilization technique selection process.

[9] This classification includes areas that contain important resource values that require protection, but would not necessarily preclude private, commercial, business, or industrial access to the lake.

[10] This classification includes areas occupied by facilities supporting various public recreational amenities and may include licensee-owned project recreation sites, as well as recreation sites owned by state or local governments that adjoin project boundaries.

Document Accession #: 20170517-3026     Filed Date: 05/17/2017

future use classifications consisting of:  future commercial marina, future residential marina, future IMZ, future residential, and future public recreation.  Future uses are subject to the SMG and a suitability hierarchy system identified in the plan, and are only allowed in specific shoreline areas as shown on the classification maps.  Duke's proposed classification maps show these various classifications along the shoreline of the project reservoirs, as well as existing Duke Energy-owned project recreation areas and other public recreation areas that are adjacent to project reservoirs.  Duke Energy used a GIS database to develop the classification maps and keeps track of shoreline changes and reclassifications overtime using a separate data layer.  Duke Energy states that this separate data layer will be provided to the Commission upon request.

12.     The proposed SMG are a set of detailed procedures, permitting processes, monitoring and enforcement provisions[11], and criteria used to define and regulate allowable shoreline development and uses at the project in a manner that balances such development with project resource needs and purposes.  The SMG include individual programs for marina facilities, conveyances, excavation, private facilities, shoreline stabilization, and miscellaneous uses.  These guidelines are substantially identical to those in the project's Comprehensive Relicensing Agreement with the exception of the definition of facility maintenance and facility rebuild, which were improved to clarify their application criteria.  The SMG were also updated to reflect changes in specific state agency names, to improve consistency in terminology used in the recreation plan, and to remove unnecessary references to other licensee hydropower projects.

13.     Unlike the 2003 SMP, the proposed SMP does not include provisions regarding recreational improvements at project reservoirs or its Access Area Improvement Initiative (AAII) program.[12]  Instead, these items are addressed in Duke Energy's proposed recreation management plan (RMP), filed pursuant to Article 407 of the current license

---

[11] Duke Energy routinely monitors the shoreline of project reservoirs to ensure activities are in compliance with the SMP and conducts inspections of permitted facilities or uses of the shoreline.  Possible violations of the SMP that may be discovered during this monitoring, include unauthorized vegetation cutting/removal, and unauthorized structures within the project boundary (encroachments).  Pursuant to the provisions of the SMG, Duke Energy implements lawful enforcement actions to correct or address violations of the plan.  These enforcement actions may include, but are not limited to, penalties, stop-work orders, permit approval cancellations, required site restoration, or required removal of non-complying structures.

[12] The AAII allows for Duke Energy to work with existing and potential lessees of Duke-owned property around the reservoirs to enhance public recreation opportunities on or adjacent to the project.

Case 5:25-cv-00159-MEO-DCK    Document 24-2    Filed 02/17/26    Page 6 of 12

Project No. 2232-650                                                          - 6 -

and currently pending before the Commission.[13]  At this time, both plans have some overlapping provisions related to specific aspects of recreation use at the project, however the proposed SMP generally addresses shoreline areas along islands and adjacent to project recreation sites, while the management of the islands and the recreation sites themselves are addressed in the proposed RMP.  Duke Energy states that the management of these recreation sites will be completely shifted to the RMP in the future.

14.     In addition, the proposed SMP incorporates appropriate changes to the plan to reflect various Commission approved amendments and shoreline reclassification requests that were issued since the plan was approved in 2003.

15.     The proposed SMP includes procedures to allow property owners or resource agencies to challenge Duke Energy regarding the mapping accuracy of a particular area of shoreline and for Duke Energy to consider such requests.  If no mapping discrepancy is found, the current shoreline classification stands.  If a mapping discrepancy is found, the property owner is given an opportunity to request a shoreline reclassification at that time or to wait until the next SMP update is filed with the Commission.  As discussed further below, Duke Energy reserves the authority to reclassify 100 linear feet or less of shoreline, without Commission approval.

16.     Under Section 8.1 of its proposed SMP, Duke Energy reserves the authority to make "minor alterations" to the SMP without public notice, or agency/Commission review to ensure flexibility in the monitoring and regulation of shoreline permitting activities.  Specifically, these "minor alterations" are limited to changes that would affect no more than 100 linear feet of shoreline at one time and typically result from misalignment of GIS mapping layers or minor shifts in the physical properties associated with a specific classification, such as sand, silt, or vegetation.  Duke Energy states that this reserved authority would allow it to correct evident mapping errors and make minor changes to classifications to reflect changes in shoreline characteristics or newly discovered resources, such as cultural resources or threatened and endangered species, to provide the necessary resource protection.  Any alterations of the SMP involving more than 100 linear feet of shoreline or the complete reclassification of an entire classification segment would be filed for prior Commission approval.[14]  Duke Energy proposes to

---

[13] Duke Energy's proposed RMP was filed on November 14, 2016, and is pending under proceeding P-2232-653.

[14] Appendix C (Shoreline Management Guidelines) incorporates guidelines that were originally included in the project's relicensing agreement filed on December 29, 2006.  One provision of these guidelines reserves Duke's authority to make unspecified minor alterations to the guidelines without public notice or agency/Commission review.  As noted in the license order and required under *(continued ...)*

Document Accession #: 20170517-3026    Filed Date: 05/17/2017

annually convene a workgroup of interested stakeholders to discuss implementation of the SMP, including shoreline management classifications and SMG. These meetings would provide for evaluations of SMG effectiveness, allow for periodic modifications of the SMP maps and SMG, and help prepare for the required ten year updates of the plan. Regarding the ten-year updates, Duke Energy proposes to consult with appropriate resource agencies and interested stakeholders every ten years and file a report with the Commission to include an evaluation of the adequacy of the SMP and a description of whether or not any revisions to the plan, SMP maps, or the SMG are needed. The filing will also include documentation of consultation with resource agencies identified in the proposed SMP and interested stakeholders on the ten-year report. If changes are needed, Duke Energy would file an updated SMP with the evaluation report for Commission approval. The first report and updated SMP would be filed in 2025.

## GIS Data

17.     The licensee's filing includes the required GIS data for the project's reservoirs/tailraces and shoreline management classifications in polygon and polyline formats, respectively.

## Consultation

18.     The licensee consulted with the entities identified in Article 409, as well as other entities and stakeholders, on the proposed SMP and provided an opportunity for these parties to provide comments on the final proposed SMP before filing it with the Commission. The parties who provided comments on the final proposed SMP were the USFWS, North Carolina Department of Environmental Quality, North Carolina Wildlife Resources Commission, South Carolina Department of Natural Resources, and Catawba Riverkeeper. Documentation of this consultation is included in Appendix H of the SMP.

19.     The comments provided primarily involve clarifications and editorial changes to the SMP, which the licensee adequately addressed in the final plan. Additionally, the USFWS provides specific comments regarding the licensee's right to make minor changes to the SMP and recommendations to minimize impacts of shoreline activities on fish and wildlife habitat. Duke Energy provides responses to the USFWS's comments as discussed further below.

---

Article 409, Duke's updated SMP is to clarify and address its reserved authority. Section 8.1 of the updated SMP provides this clarification. While the updated SMP includes the guidelines from the relicensing agreement, Section 8.1 of the plan clearly limits Duke's reserved authority to make shoreline classification changes that affect shoreline areas that are no more than 100 linear feet in length without Commission approval.

Project No. 2232-650                                                          - 8 -

**Public Notice**

20.     On January 25, 2017, Commission staff issued a public notice of the licensee's application, establishing February 24, 2017, as the deadline for filing comments, motions to intervene, and protests.  No responses to the notice were received.

**Discussion**

21.     The USFWS states that Duke Energy should not reserve the right to make minor alterations to the plan without public notice, consultation with the resource agencies, or Commission review.  Further, the USFWS states that if Duke Energy defines minor alterations, it is comfortable without consultation.  Duke Energy summarizes its proposal to allow for specific minor alterations of the plan, as described in Section 8.1, emphasizing that such changes would involve classification changes that affect no more than 100 feet of shoreline at one time and only if based on either mapping errors or shifts in a shoreline's physical properties or characteristics.  Such changes would be implemented to provide additional protection to areas with shifts in existing shoreline resources or in areas with newly discovered resources (cultural resources, threatened or endangered species, etc.).

22.     Section 8.1 of the plan adequately defines the type and nature of the minor alterations that Duke Energy may allow without prior Commission or agency review.  These provisions enhance the licensee's ability to implement the proposed SMP in a manner that protects shoreline resources.  Any alterations of the plan outside the scope of the minor changes allowed under Section 8.1 would not be permitted without prior Commission review and approval and in turn, would require appropriate consultation with resource agencies.  For these reasons, we find the minor alteration provisions of the proposed plan reasonable.

23.     Overtime, there is a potential for these individual, reclassified 100-foot shoreline segments to occur near or adjacent to each other, such that they may have a cumulative effect on a particular shoreline area, or classification type.  In order to monitor these 100-foot shoreline segments and address any potential adverse cumulative effects, Duke Energy should file an annual report identifying the reclassification changes, project development, length of affected shoreline, applicable GIS location data, and basis of each 100-foot shoreline segment it reclassified during the prior calendar year and the Commission should reserve the right to require changes to the project's SMP based on its review of such reports.

24.     The USFWS states that shoreline work activities should be reviewed by its agency and state natural resource agencies for potential impacts on trust resources.  The USFWS also states that work activities should be discouraged during fish spawning season, and for any activities that may impact mussels which are sensitive to sedimentation.  The USFWS also states that contractors should use best management practices and pay into a

mitigation fund.  In response, Duke Energy explains how agency consultation is incorporated into its permitting process for certain shoreline activities, and how it implements general permits with applicable federal and state regulatory agencies for other shoreline activities, without the need for agency consultation on each individual permit.  Duke Energy also notes that the proposed plan prohibits excavation activities during the fish spawning season (March 1 through June 30) and prohibits stabilization activities in areas classified as IMZ during this time period.  Finally, Duke Energy states that applicants for certain lake-use permits are required to pay a Habitat Enhancement Program fee toward specific activities that benefit fish and wildlife habitat.

25.     The proposed plan, including the SMG, includes adequate provisions to protect fish and wildlife resources and habitats related to allowable shoreline activities on project reservoirs.  These provisions include requirements related to necessary agency consultation as well as appropriate limitations on specific shoreline activities.  For these reasons, we find that the proposed SMP and SMG adequately addresses the USFWS's comments regarding resource protection.

26.     Duke Energy proposes to consult with specific resource agencies and other interested stakeholders every ten years and file a report with the Commission to include an evaluation of the adequacy of the SMP and a description of whether or not any revisions to the plan, SMP maps, or the SMG are needed, as well as documentation of its consultation with appropriate entities.  If changes are needed, Duke Energy would file an updated SMP with the evaluation report for Commission approval.  The first report and updated SMP would be filed in 2025.  We concur with this proposal.  Ordering paragraph (B) requires Duke Energy to prepare and file the proposed report and any associated updated SMP for Commission approval by December 31, 2025, and every ten years thereafter.

27.     The proposed SMP, including the classification maps, contains the additional provisions identified in Article 409, and updates the 2003 SMP to incorporate subsequent Commission approved plan amendments and shoreline reclassifications.  The SMG in the updated plan are consistent with the proposed SMG in the Comprehensive Relicensing Agreement.  Implementation of the proposed SMP would allow Duke Energy to manage and protect project shoreline resources in a manner consistent with its license obligations and project purposes and also allow for reasonable shoreline development at the project.  For these reasons, the proposed SMP should be approved.

28.     The GIS data filed by the licensee meets the requirements of Article 409.  As required, Duke Energy provided two GIS datasets of the project's reservoirs/tailraces and shoreline management classifications, in polygon and polyline formats, respectively.  The GIS dataset for the shoreline management classifications matches the classifications as presented in the maps contained in the proposed SMP update.  Commission staff will use the GIS data for tracking shoreline resources and uses and to facilitate future reviews.

Project No. 2232-650                                              - 10 -

The Director orders:

(A)     Duke Energy Carolinas LLC's updated shoreline management plan filed on October 4 and November 4, 2016, as supplemented on March 2, 2017 pursuant to Article 409 of the license for the Catawba-Wateree Hydroelectric Project No. 2232, as modified by ordering paragraphs (B) and (C) below, is approved.

(B)     Beginning on December 31, 2025 and every ten years thereafter, Duke Energy Carolinas LLC must file for Commission approval a report containing an evaluation of the adequacy of the approved shoreline management plan (SMP) and whether or not changes are warranted.  If revisions are needed, the licensee must file, for Commission approval, a revised SMP with the report.  The report/revised SMP must be developed after consultation with the U.S. Fish and Wildlife Service, North Carolina Department of Environmental Quality and Natural Resources, North Carolina Wildlife Resources Commission, South Carolina Department of Parks, Recreation, and Tourism, and South Carolina Department of Natural Resources, and other interested stakeholders.

(C)     Beginning on January 31, 2018 and every year thereafter, Duke Energy Carolinas LLC must file an annual report describing shoreline reclassifications it approved during the prior calendar year pursuant to Section 8.1 of the approved SMP. The report must be provided in either a spreadsheet format or a very brief written format and identify the following information for each reclassified 100-foot shoreline segment: the type and reason for the reclassification change, project development, affected shoreline length, and GIS location data.  If no such shoreline reclassifications were approved by Duke Energy Carolinas LLC during the prior calendar year, a letter stating this fact must be filed in lieu of the report.  The Commission reserves the right to require changes to the project's SMP based on its review of the annual reports.

(D)     This order constitutes final agency action.  Any party may file a request for rehearing of this order within 30 days from the date of its issuance, as provided in section 313(a) of the Federal Power Act, 16 U.S.C. § 825*l* (2012), and the Commission's regulations at 18 C.F.R. § 385.713 (2016).  The filing of a request for rehearing does not operate as a stay of the effective date of this order, or of any other date specified in this order.  The licensee's failure to file a request for rehearing shall constitute acceptance of this order.

Robert J. Fletcher
Land Resources Branch
Division of Hydropower Administration
    and Compliance

Document Content(s)

P-2232-650.DOC............................................................1