UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:25-CV-00159-MEO-DCK

| | |
|---|---|
| DUKE ENERGY CAROLINAS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DEBORAH BOGGS HARWELL,<br>LAKE CRUISES, INC.,<br><br>Defendants. | MEMORANDUM & ORDER |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss (Doc. No. 21). For the reasons set forth below, the Court will grant in part and deny in part the Motion.

## I. BACKGROUND

For purposes of the Motion, the Court accepts as true the well-pleaded factual allegations of the Amended Complaint (Doc. No. 15). *See Evans v. United States*, 105 F.4th 606, 615 (4th Cir. 2024). Plaintiff Duke Energy Carolinas, LLC ("Duke") is the Federal Energy Regulatory Commission ("FERC") licensee for the Catawba-Wateree Hydroelectric Project (the "Project"), of which Lake Norman is a part. (Doc. No. 15 ¶¶ 10–11). Duke's FERC license requires it to implement the FERC-approved Catawba-Wateree Shoreline Management Plan ("SMP") and "take any lawful action necessary to correct any violation" of the SMP, including "requiring the removal of any non-complying structures and facilities." *Id.* ¶¶ 12, 27.

Defendant Lake Cruises, Inc. ("Lake Cruises") owns two "cruise and dinner

boats," the *Catawba Queen* and the *Lady of the Lake* (the "Boats"). *Id.* ¶¶ 13, 20. Defendant Deborah Boggs Harwell ("Ms. Harwell") is the President of Lake Cruises, in which she holds a controlling interest. *Id.* ¶¶ 14–17. For many years, Lake Cruises moored the Boats at Queens Landing, a leased dock on Lake Norman. *Id.* ¶¶ 20, 22–23. When the lease at Queens Landing expired in February 2023, Lake Cruises anchored the Boats between a nearby pair of Duke-owned islands—where they remain despite Duke's repeated demands for removal. *Id.* ¶¶ 23–26, 35, 37.

Duke filed its original Complaint on October 2, 2025, invoking Rule 57 and the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 *et seq.*, and seeking a declaration that it has the right to control activities, structures, and vessel movement on Lake Norman, together with damages and an injunction for trespass. (Doc. No. 1). Defendants moved to dismiss that Complaint under Rule 12(b)(1) on November 25, 2025. (Doc. No. 11). Duke then filed an Amended Complaint on December 15, 2025, adding allegations directed at establishing subject-matter jurisdiction. (Doc. No. 15).

The Amended Complaint pleads three counts: Count I, a claim for declaratory judgment regarding Duke's rights and obligations as FERC licensee under the SMP, *id.* at 9–12; Count II, trespass under North Carolina law, *id.* at 12–14; and Count III, injunctive relief requiring Lake Cruises to remove the Boats from Duke's property, *id.* at 14. The Amended Complaint further alleges, largely "upon information and belief," that Lake Cruises is the alter ego of Ms. Harwell and asks the Court to pierce Lake Cruises' corporate veil to hold her personally liable. *Id.* ¶¶ 14–19.

Defendants moved to dismiss the Amended Complaint under Rules 12(b)(1)

and 12(b)(6) on January 20, 2026. (Doc. No. 21).

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

A federal court must satisfy itself of subject-matter jurisdiction as a threshold matter before reaching the merits of any case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). "It is elementary that the burden is on the party asserting jurisdiction to demonstrate that jurisdiction does, in fact, exist." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). Where, as here, a defendant raises a facial challenge—arguing that the allegations of the complaint are insufficient to confer jurisdiction—the Court applies the same standard as under Rule 12(b)(6): it accepts the complaint's factual allegations as true and asks whether those allegations suffice to invoke jurisdiction. *Evans*, 105 F.4th at 615; *see also Benton v. Layton*, 628 F.Supp.3d 661, 663–64 (E.D. Va. 2022) ("[At] this stage of the proceedings, this Court's analysis is both informed and constrained by the four corners of the Complaint and documents incorporated therein.").

### B. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is

legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 570; *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30 (2012). A complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court, however, accepts all well-pleaded facts as true and draws all reasonable inferences in Plaintiff's favor. *See Conner v. Cleveland Cnty.*, 22 F.4th 412, 416 (4th Cir. 2022); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

In so doing, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019). Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (quoting *Ashcroft*, 556 U.S. at 678). Thus, a Rule 12(b)(6) motion determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## III. DISCUSSION

### A. Subject-Matter Jurisdiction (Count I)

#### *1. The Declaratory Judgment Act does not, by itself, confer jurisdiction.*

The parties agree—and the law is uniform—that the DJA "is remedial only and neither extends federal courts' jurisdiction nor creates any substantive rights." *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 55 (4th Cir. 2011) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950)). Duke expressly disclaims reliance on the DJA as its jurisdictional hook: "Duke Energy is not claiming that 28 U.S.C. § 1331 federal question jurisdiction is granted under the DJA." (Doc. No. 24 at 5). To the extent Count I rests on the DJA alone, Defendants are correct that it cannot supply jurisdiction, and the Court so holds.

#### *2. 16 U.S.C. § 825p does not create federal jurisdiction.*

Section 825p of the Federal Power Act ("FPA") provides that federal district courts "shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, [the FPA] or any rule, regulation, or order thereunder." 16 U.S.C. § 825p. By its terms, however, § 825p directs *where* certain suits may be brought and makes that jurisdiction exclusive; it does not itself create the "liability or duty" a plaintiff must be enforcing, nor does it say who may sue whom. "Exclusiveness is a consequence of having jurisdiction, not the generator of jurisdiction . . . ." *Pan Am. Petroleum Corp. v. Super. Ct. of Del.*, 366 U.S. 656, 664 (1961).

The Fourth Circuit has analyzed the scope of the FPA's exclusive jurisdiction provision and held that the provision on its own does not confer federal jurisdiction. *Pressl v. Appalachian Power Co.*, 842 F.3d 299, 306 (4th Cir. 2016). Rather, a case must first arise under federal law before exclusive jurisdiction can attach under § 825p. *Id.* The statutory context supports this holding: the FPA's own enforcement provision authorizes the Commission—not a licensee—to bring an action to enjoin violations of the Act or its rules, regulations, or orders. *See* 16 U.S.C. § 825m. Neither party has identified any provision of the FPA giving a licensee, as distinct from FERC itself, a freestanding federal right of action against a private third party. The Court therefore cannot rest jurisdiction on § 825p.

*3. Count I "arises under" federal law.*

Jurisdiction over Count I instead turns on the traditional four-factor *Grable* test for "arising under" jurisdiction: whether "a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

Duke acknowledges that Count I is a "state law claim for trespass . . . ." (Doc. No. 24 at 18). Defendants reason from that concession as follows: strip away the declaratory-judgment claim, and Duke's only avenue into court is a state-law trespass action; in that action, a federal issue would only surface if Defendants disputed Duke's authority—under its FERC license and the SMP—to exclude the Boats from their current location. (Doc. No. 26 at 8). On Defendants' view, Duke has simply used

the DJA to sue first on an issue that otherwise would arise only as a defense to a state-law claim, and a plaintiff cannot manufacture federal jurisdiction that way. *See Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 16 (1983) ("[I]f, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking."). Defendants claim this fact defeats the "necessarily raised" prong because nothing about the trespass dispute requires resolution of the FERC-license question—it is relevant only if and when Defendants choose to raise it. (Doc. No. 26 at 6–7).

That argument has force against a claim that is merely a state-law trespass claim dressed up in federal clothing. But Count I does more—it independently pleads that specific, enumerated provisions of a FERC-approved SMP must be interpreted to determine whether the Boats' presence in their current location is authorized. (Doc. No. 15 ¶¶ 39–43). Interpreting the FERC-approved definition of "Project Boundary" and the SMP's mooring, abandonment, and removal provisions necessarily raises a federal issue. The issue involves an actual dispute: Defendants deny the Boats have been abandoned and have not removed them despite demand. And the issue is substantial, given the interstate scope of the Project and FERC's interest in consistent application of licensee shoreline plans. On this record, the Court is not persuaded that Duke's federal claim is the kind of "wholly frivolous federal claim serv[ing] as a pretext" that *Lovern* warns against. 190 F.3d at 655.

Furthermore, although § 825p does not independently confer jurisdiction, it remains relevant to the fourth *Grable* factor: whether the federal issue is "capable of

resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Congress's choice to make federal jurisdiction "exclusive" over suits to enforce liabilities or duties created by the FPA, or to enjoin violations of its rules, regulations, and orders, 16 U.S.C. § 825p, reflects a considered judgment that disputes of this kind belong in federal, not state, court. That judgment confirms, rather than undermines, the conclusion that adjudicating Count I in federal court does not disrupt any congressionally approved division of labor between federal and state courts—if anything, Congress approved the opposite balance from the one Defendants seek.

*4. The Amended Complaint adequately alleges an actual controversy.*

Independent of the jurisdictional question above, a court may not grant declaratory relief absent a case or controversy that is "definite and concrete, touching the legal relations of parties having adverse legal interests"—not "hypothetical or abstract." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–42 (1937); *see White v. Nat'l Union Fire Ins. Co.*, 913 F.2d 165, 167–68 (4th Cir. 1990). Duke bears the burden of establishing this on the face of its pleading. *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993).

Defendants argue the Amended Complaint alleges no facts disclosing Plaintiff's actual position on any legally pertinent matter. (Doc. No. 22 at 8). But the Amended Complaint alleges that Duke has repeatedly demanded removal of the Boats and that Defendants have refused. (Doc. No. 15 ¶¶ 35, 37). Defendants' own Memorandum confirms that the parties dispute what should happen to the Boats and that no resolution has been reached. (Doc. No. 22 at 2–3). Accepting these

well-pleaded facts as true, a demand followed by refusal, coupled with a live dispute over whether specific SMP provisions permit the Boats' continued presence, is a "definite and concrete" controversy between adverse parties, not a hypothetical one. *Aetna*, 300 U.S. at 240–41.

For these reasons, the Court will deny the motion to dismiss as to Count I.

**B. The Court Retains Supplemental Jurisdiction Over the Trespass Claim (Count II)**

A district court has supplemental jurisdiction over state-law claims that "form part of the same case or controversy" as claims within its original jurisdiction, 28 U.S.C. § 1367(a), but may decline to exercise it where the state claim "substantially predominates," 28 U.S.C. § 1367(c)(2).

Defendants argue the trespass claim "substantially predominates over" and "entirely swallows" the federal claim, and that disputes over North Carolina real property are quintessentially matters for state courts. (Doc. No. 22 at 10–11); *see also* (Doc. No. 26 at 6–8). The Court does not doubt that land-use and trespass disputes are ordinarily and appropriately matters of state concern. But Duke's trespass claim and its SMP-interpretation claim rest on the same underlying facts—the location and status of the same two vessels—and resolution of the federal claim (whether the SMP authorizes Duke to require removal of the Boats from their current location) will substantially inform, if not resolve, the trespass claim. Retaining both claims avoids piecemeal litigation of a single factual dispute in two forums. The Court declines to exercise its discretion to dismiss Count II.

### C. Count III Does Not State an Independent Claim

Count III seeks an injunction as an independent cause of action. Injunctive relief, however, is not its own claim. It is an equitable remedy which requires an underlying substantive claim. *See Mowery v. Nat'l Geospatial-Intel. Agency*, 42 F.4th 428, 441 (4th Cir. 2022) ("Injunctions are not magic beans that may be handed out without any analysis of the underlying claims or a showing that such relief is warranted."). Duke's response to the Motion does not defend Count III as an independent claim. (*See* Doc. No. 24). Nor does it identify authority permitting a freestanding injunction count separate from the substantive claims it would remedy. The Court will grant the motion to dismiss Count III without prejudice to a potential future request, if any, by Duke for injunctive relief as a remedy on Counts I and II.

### D. The Amended Complaint Does Not Plausibly Allege Grounds to Pierce Lake Cruises' Corporate Veil

Because Lake Cruises is a North Carolina corporation (Doc. No. 15 ¶ 8), North Carolina's substantive law of veil-piercing governs, even though federal procedural law governs the sufficiency of the pleading. *See Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 386 (4th Cir. 2018). In *Glenn v. Wagner*, the Supreme Court of North Carolina reiterated the three elements of the "instrumentality rule" for veil-piercing: (1) complete domination of finances, policy, and business practice such that the corporation had "no separate mind, will or existence of its own"; (2) that such control was used to commit fraud or wrong, violate a legal duty, or perpetrate a dishonest and unjust act; and (3) that the control and breach of duty proximately caused the injury alleged. 329 S.E.2d 326, 330 (N.C. 1985). At the pleading stage, the question

is whether the complaint alleges facts that, if believed, would tend to establish all three of the *Glenn* elements. *Johnson v. Cricket Council USA, Inc.*, 658 F.Supp.3d 276, 284 (E.D.N.C. 2023).

The Amended Complaint's veil-piercing allegations consist of one factual statement—that Ms. Harwell is President of Lake Cruises—followed by five paragraphs, each pleaded "upon information and belief," reciting that Lake Cruises "was, and is, organized and operated as the alter ego" of Ms. Harwell, that she exercised "actual control" and "complete dominion and control," that Lake Cruises "has, or has had, inadequate capitalization," and that the parties "intermingled their personal and financial affairs." (Doc. No. 15 ¶¶ 14–19). These are legal conclusions restated as factual allegations. Being president of a corporation, without more, does not plausibly establish the "complete domination" the instrumentality rule requires. *Troy Lumber Co. v. Hunt*, 112 S.E.2d 132, 134 (1960).

More fundamentally, the Amended Complaint says nothing at all—not even in conclusory terms—about the second and third *Glenn* elements: that Ms. Harwell's control of Lake Cruises was *used* to commit a fraudulent, wrong, or dishonest act, or that such control *proximately caused* the injury Duke alleges. Duke defends the sufficiency of the pleading in general terms and argues the claim is fact-intensive and better suited to discovery, but it does not identify any allegation in the Amended Complaint that addresses either element. *See* (Doc. No. 24 at 19–22). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citation omitted). The prospect that discovery might later develop facts supporting these elements does not excuse the absence of any factual allegation supporting them now.

In the alternative, Duke requests leave to amend to add factual allegations addressing the *Glenn* elements. (Doc. No. 24 at 21–22). The Court finds leave to amend under Rule 15(a) justified on these facts pursuant to *Foman v. Davis* and the relevant factors. 371 U.S. 178, 182 (1962) (considering undue delay, bad faith or dilatory motive by the movant, repeated failure to cure deficiencies in allowed amendments, and futility). Therefore, the Court will dismiss without prejudice the veil-piercing claim, and all claims against Defendant Harwell. Further, the Court will grant leave for a limited amendment of the pleading in this regard.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion to Dismiss Amended Complaint (Doc. No. 21) is **GRANTED IN PART** and **DENIED IN PART**;
2. Count III (Injunctive Relief) is **DISMISSED WITHOUT PREJUDICE** to a future request for injunctive relief as a remedy on any surviving claims;
3. The claims against Defendant Deborah Boggs Harwell are **DISMISSED WITHOUT PREJUDICE**;

4. Plaintiff **may file** a Second Amended Complaint, limited to the veil-piercing allegations against Defendant Harwell, within **twenty-one (21) days** of the entry of this is Order; and

5. This case **shall proceed toward trial on the merits** of the remaining claims in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED.**

Signed: September 9, 2026

Matthew E. Orso
United States District Judge